[Civ. Nos. 6330, 6331, 6332, 6333.  Third Appellate District.—May 29, 1940.]

JOHN P. MEEHAN et al., Appellants, v. HUNTINGTON LAND AND IMPROVEMENT COMPANY (a Corporation), Respondent (and Consolidated Cases).

Charles H. Brock, Elza C. Mowry and Albert E. Forster for Appellants.

Gibson, Dunn & Crutcher and H. F. Prince for Respondent.

PULLEN, P. J.—The plaintiffs in these consolidated cases brought actions against the Huntington Land and Improvement Company to rescind contracts for the purchase of certain lots in two subdivision tracts placed on the market by that company, the plaintiffs claiming the right to rescind because of alleged misrepresentations and false and fraudulent promises made to the plaintiffs as purchasers by the salesman employed by the general agent in charge of the sales in the subdivisions.

It was claimed that prior to the signing of the purchase contracts, plaintiffs were shown a map of the tracts, and the sales agent told them that all of the lots in the tracts, including the lots agreed to be purchased, would be at least 100 feet in width, with certain exceptions, and that each of the lots would be restricted to a single residence which should cost or be fairly worth not less than $15,000, and that the land company would cause each purchaser of a lot to be bound by provisions contained in the contract of sale, and by appropriate deed provisions so that any residence erected thereon would cost or be worth not less than $15,000. Other representations were claimed to have been made concerning which there was no controversy.

The first count in the complaint for rescission alleged that these representations with respect to the size of the lots, and as to the cost requirement of residents were false and untrue and were known by the land company to be false and untrue when made. It was then alleged that after the plaintiffs had purchased their property, and had received their deeds, and in September, 1935 (more than five years after the signing of the contracts), the land company re-subdivided the tracts in question, reducing the size of the unsold lots, and modified the cost requirements with respect to the cost of residences, by reducing them from $15,000 to a lesser sum.

It was then alleged that the circumstances of the alleged fraud were not discovered until November, 1935, whereupon

a notice of rescission.was given by the plaintiffs to the defendant company.

The second count of the complaint is identical with the first count, with the exception that in place of the statement that the defendant "represented to the plaintiffs" it is alleged that the defendant "promised to the plaintiffs", and with respect to these promises, it is alleged that the defendant company in making the promises, had no intention of performing such promises and in fact had an undisclosed intention not to perform, and in fact did not perform.

The third count reincorporated all the allegations in the first and second counts and alleged that because of said matters there resulted a failure of consideration. The prayer was for rescission and the recovery of all moneys paid.

The answer of the defendant denied all material allegations and particularly denied that the defendant ever at any time made any false or untrue representations to plaintiffs, and likewise denied it made the alleged promises without intention of performing or with an intent not to perform them. Failure of consideration was likewise denied, and separate defenses were pleaded to the effect that the plaintiffs knew or should have known, of the matters set forth in their complaint upon receiving their contract of sale in August, 1929. The defense of laches and the bar of the statute of limitations was also pleaded.

The trial court found, among other things, that the salesman, prior to the execution of the contracts in question, told plaintiffs that all lots to be sold in the tract about to be subdivided would be at least 100 feet in width, and that defendant would never re-subdivide any of said lots, and that each residence erected thereon would be fairly worth not less than $15,000, which representations the court found, represented the true condition of the area represented on the map, and was the true intention of defendant as to the remainder of the entire area at the time these representations were made, which belief and intention was warranted by the information at hand; and was made without any intent to deceive or defraud plaintiffs, and was made in the honest expectation and belief that such representations would be fairly carried out.

It was admitted, and the court found, that in 1935, defendant changed its conditions as to the balance of the tract and reduced the size of the lots and permitted the building

of residences thereon with less than $15,000, but found that such subsequent re-subdivision and changes were honestly believed to be necessary to prevent the area from deteriorating and that such changes were necessary to protect the investment of the lot owners, including plaintiffs, due to the general depression in real estate, which occurred between the time plaintiffs acquired their lots and September, 1935, when the changes were made. The court also found that by reason of the changes the tract in general, as well as plaintiffs' lots, was thereby made more attractive and valuable for residences, and had a higher market value by reason thereof. It was also found that plaintiffs did not rely upon the representations of defendant at the time the contracts were executed. The plaintiffs received the contracts prior to their execution, and were retained overnight and read and signed, and after execution they were returned to plaintiffs, who retained possession thereof until the payments thereon were fully made, when in August, 1931, the deeds were executed by defendant to plaintiffs.

The contracts and the deeds issued in fulfillment of the contracts differed from the statements and representations of the salesman in several particulars. The written instruments contained no provision against subdividing the unsold lots or that each residence would be worth at least $15,000, or that all deeds for property in the tract would contain such restrictive conditions, the deed and contract binding only the specific property covered by the particular investment.

Many other findings were made along the lines indicated above, and from such findings the court concluded and entered judgment to the effect that no untrue representations of any kind were made as to any present existing fact by defendant to plaintiffs, and all representations made by the agent as to what would be done in the future with respect to maintaining the size of the lots, and the cost of the residences thereon were believed by the agent to be true when made, and were made without intent to deceive or defraud the purchasers in any way, and the changes were actually beneficial to plaintiff.

There seems to be no contention by plaintiffs either in their complaint or at the trial, that any untrue representations were made as to any existing fact, but the action is founded upon promises and representations made with respect

to future matters which defendant knew to be untrue when made. The agent who made the sales to plaintiffs testified he believed the statements he made were true, and Mr. Meehan, a plaintiff, testified that it was his then belief that when the property was sold to him defendant fully intended to follow out its representations. The president of the land company also testified that his company believed that the original size of the lots and the cost restrictions would be adequate at all times for the development of the tract and for maintaining its character as an exclusive residential tract, but because of the depression and the slowing up of sales it was then determined that certain changes should be made to prevent the tract from deteriorating to the detriment of everyone concerned. In view of this uncontradicted testimony the court found accordingly.

■ The law is clearly settled that representations of this character, made in good faith and without intent to deceive the purchaser, and made in the honest expectation that they would be carried out, do not afford a basis for an action for rescission even though ultimately the representations are not carried out. The gist of an action for deceit or rescission under such circumstances is one made without any intention of performance. (Sec. 1572, Civ. Code; *Lawrence* v. *Gayetty,* 78 Cal. 126 [20 Pac. 382, 12 Am. St. Rep. 29]; *Ayers* v. *Southern Pacific R. Co.,* 173 Cal. 74 [159 Pac. 144, L. R. A. 1917F, 949]; *Benson* v. *Hamilton,* 126 Cal. App. 331 [14 Pac. (2d) 876]; *Cutler* v. *Bowen,* 10 Cal. App. (2d) 31 [51 Pac. (2d) 164].)

■ So, also, is the finding that in entering into the contracts, plaintiffs did not rely upon the representations made by defendant, fully supported by the evidence. Mr. Meehan testified he received the contract which he took home, read over, and that Mrs. Meehan also read it over and they together discussed it. It was signed, and the next morning he returned it to the defendants. He noted that the contract did not contain a number of the provisions which he had been told would be contained in the contracts and in addition noticed certain discrepancies between the salesman's statements and the provisions in the contract, but made no complaint. Some time later, deeds were executed which conformed to the contracts, but which did not contain the restrictions which the salesman had stated would be set forth in the contracts

and deeds. ▮ With knowledge of these facts plaintiffs could not wait some five years and then attempt to rescind the transactions. (*Ruhl* v. *Mott*, 120 Cal. 668; *Nicolaisen* v. *Toffelmier*, 97 Cal. App. 342 [275 Pac. 823]; *Gratz* v. *Schuler*, 25 Cal. App. 117 [142 Pac. 899].)

▮ Plaintiffs also attempted to show that the change made by defendant in 1935, with respect to the size of the lots and the reduction of the cost requirements of the residences to be built thereon resulted in material damage to plaintiffs' lots. As to this there was a direct conflict and the court found that the changes increased the market value of plaintiffs' property, and not only did not result in any damage but was actually financially beneficial and rendered plaintiffs' property more suitable for residential purposes.

▮ It was also found that plaintiffs' cause of action was barred by the statute of limitations and laches. The evidence in the record, and referred to in the recital of the facts is, if believed by the court, sufficient to justify such finding.

The judgment must be affirmed. It is so ordered.

Thompson, J., and Tuttle, J., concurred.