[Civ. No. 15098.   Second Dist., Div. One.   May 27, 1946.]

JACK ALFRED GARLAND et al., Plaintiffs; IOLA WOODS et al., Appellants, v. ISIDOR HIRSH, Respondent.

Robert M. Miller for Appellants.

Parker, Stanbury & Reese for Respondent.

YORK, P. J.—This is an appeal from a judgment on the verdict of the jury in favor of defendant Hirsh, arising out of an action for the recovery of damages to property of plaintiff Garland and for personal injuries sustained by plaintiffs Iola Woods and Rose Ritter in a collision between the automobiles of said defendant Hirsh and the plaintiff Garland. Plaintiff Merle Ritter joined in the action because as the husband of Rose Ritter he was personally liable for her hospital and medical bills incurred as result of her injuries.

The appeal is presented upon a settled statement from which it appears that the appellants were not charged with contributory negligence and seek a review of the judgment upon two grounds: (1) Insufficiency of the evidence to justify the verdict; and (2) error in giving defendant's instruction number 7.

According to the settled statement, the first point may be narrowed to the contention that the automobile of plaintiff Garland, in which appellants Rose Ritter and Iola Woods were passengers, was traveling in a northerly direction on Los Angeles Street in the city of Los Angeles, "and entered the intersection of Twelfth Street at the time when the semaphore signals were in operation and 'go' for north and southbound traffic. The respondent was traveling easterly on Twelfth Street and entered said intersection at a time when appellants claim that the signals were 'stop' for east and westbound traffic."

It also appears that respondent, "in his opening argument, stated his defense to be, among other things, that the signals, if operating, commenced operating simultaneously with the entry of the automobiles into the intersection or so shortly before that they did not conclusively decide the case." The narrative of the evidence set out in the statement is limited to the above points, to wit:

It was stipulated that Twelfth Street is 40 feet wide at its intersection with Los Angeles Street, which is 54 feet wide; that the semaphore signals at that intersection and at Pico and Los Angeles Street are on the same circuit and are both operated by the same automatic switch; that on May 24, 1944, said signals were set to go into operation at 7 a. m., and that Pico Street is the next intersection south of Twelfth Street, approximately 450 feet distant therefrom.

The plaintiff Garland testified that he picked up three passengers on the morning of May 24, 1944, including Rose

Ritter and Iola Woods; that Rose Ritter sat beside him in the front seat and Iola Woods sat in the rear seat with the other passenger; that he traveled north on Los Angeles Street to its intersection with Pico Boulevard; that the signals were "stop" at Pico and that he waited for them to turn to "go," whereupon he proceeded northerly toward Twelfth Street; that he traveled this route every day and knew that he must and did drive his car at 10 or 15 miles per hour in order to wait for the signals at Twelfth Street to change to "go"; that when he was 75 or 100 feet south of the intersection of Twelfth Street, he first noticed respondent Hirsh's car about 150 feet west of Los Angeles Street on Twelfth Street traveling 45 to 50 miles per hour; that he next saw the signal on the southwest corner of the intersection change from "go" to "stop" for east and westbound traffic; that he therefore assumed that respondent would heed the signal and he took his eyes from said signal and respondent's automobile and watched the signal on the northwest corner of said intersection; that the last mentioned signal changed to "go" for north and southbound traffic when he was 25 or 30 feet south of the intersection, whereupon he speeded up to 20 miles an hour; that the next time he saw respondent's automobile was when Rose Ritter shouted "Jack," at which time he was entering the intersection; that he applied his brakes and skidded his wheels and came to a stop when his left front fender collided with the right front fender of respondent's car; that the accident occurred at 7:04 a. m. on May 24, 1944; that he was a garment worker and with Rose Ritter and Iola Woods was employed at a manufacturing establishment at Ninth and Los Angeles Streets. Said witness further testified that he was traveling in the lane near the center of the street and was approximately 14 feet into the intersection at the time the collision occurred; that respondent was traveling 45 to 50 miles per hour and did not slow down or swerve from his course at any time before the impact; that after the impact respondent's car swung across Twelfth Street to the northerly curb then cut sharply back in a southerly direction across the south curb of Twelfth Street and upon the lawn of a church about 50 feet east of Los Angeles Street; that after the accident he noticed the respondent was dazed and stumbling around, but he did not smell liquor or get the impression that respondent had been drinking.

Mrs. Francis Vallerio testified that she alighted from a

streetcar at Twelfth and Main Streets and looked at her watch which showed the time to be 7:02 a. m.; that she was due at 7:30 a. m. at 750 East Twelfth Street and she proceeded to walk easterly; that the signals at Twelfth and Los Angeles Streets were in operation and she crossed Los Angeles Street with the "go" signal for east and west traffic; that when she was about 35 feet east of Los Angeles Street she looked back and saw Della Smith standing on the corner of Twelfth and Los Angeles Streets facing easterly; that when she observed Della Smith she waited for her; that she did not notice the signals at that instant and thereupon the automobiles of plaintiff and respondent collided; that the respondent's car ran into the plaintiff's car and not vice versa, the front of the Hirsh car and the side of the Garland car being the parts involved; that the Garland car was turned slightly to the east by the impact and that the Hirsh car careened to the left then turned sharply to the right and came to rest on the church lawn approximately 50 feet east of said intersection; that the Garland car entered the intersection first; that the Hirsh car was traveling about 40 miles per hour; that the observations she made were made over her left shoulder, as she walked eastward; that she did not give her name to the police officer; that Mr. Hirsh was dazed and she tried to open the door of his automobile but that it stuck and some man came and helped him out of the car.

Della Smith, a garment worker employed at the same place as Mrs. Vallerio, testified that she was walking easterly on Twelfth Street intending to cross Los Angeles Street; that when she arrived at the southwest corner of said intersection, she noticed that the signals were "go" for north and south traffic; that she continued to watch the signals and they remained the same; after three or four seconds she observed the collision; that she did not observe the cars until they were almost at the point of impact; that she did not drive but estimated the speed of the Hirsh car to be "very fast," about 45 miles per hour, and the speed of the Garland car to be about 20 miles, when she first saw him and at the time of the impact he was almost stopped; that the front of the Hirsh car ran into the side of the Garland car at about the hub and that the Garland car entered the intersection first.

Mr. William Wittman testified that he was driving north on Los Angeles Street; that his route took him across Pico Street at Los Angeles Street; that he had not thought about

the signals at Pico until several months after the accident when some person telephoned him and asked what he recalled in that regard. Said witness further testified that he usually approached the intersection of Twelfth and Los Angeles from the north arriving there at "very nearly" or "shortly after" 7 a.m. On the morning of the collision he took a route "which he travels about twice a month and takes a little longer," thus he estimated the time of the collision to be between 7:10 and 7:20 a.m.; that the route he took on that morning approached said intersection from the south; that it was his recollection that he noticed the Garland car at Pico; that the signal was "stop" for north and southbound traffic at Pico; that he stopped and noticed the Garland car at that time; that when the signal at Pico turned to "go" for north and south traffic, both he and Garland proceeded north; that he drove to the right and slightly behind Garland; that he had his mother with him whom he intended to and did leave out of his car at the southeast corner of Twelfth and Los Angeles Street and that he intended to turn the corner; that he did not notice or recall how the signals were at that intersection at the time of the collision, but immediately after he noticed that all of the signals on that corner were in operation; that he saw the collision and estimated the speed of both cars at 25 miles per hour and the point of impact to be about the center of the intersection; that the Hirsh car entered the intersection ahead of the Garland car.

Mrs. Rose Ritter testified that she first observed respondent Hirsh's car when it was practically in the intersection and that she yelled "Jack"; that plaintiff Garland applied his brakes immediately; that she suffered lacerations and had a miscarriage as a result of the collision; the evidence that she suffered a miscarriage consisted of testimony that she was pregnant at the time of the collision and while in the hospital a nurse had noticed that "a small piece of tissue passed" on June 21st; that the nurse did not show this to the doctor and no doctor saw it, but acting on said information, appellant's doctor curetted her the next day; that this curettement would have terminated the pregnancy in and of itself. The small piece of tissue was thrown away by the nurse and was not handled or inspected. Mrs. Ritter testified that she had been hemorrhaging for several days and on June 21st she passed a piece of tissue and called the nurse's attention to it; that she paid no consideration for her ride with plaintiff Garland.

Iola Woods testified that she did not see anything that happened before the collision; that she was struck on the head and was dazed by the impact and was hospitalized for what was claimed to be a severe brain concussion. The emergency hospital records showed that she walked in and out, and remained there for nine minutes. No evidence of concussion was discovered there. Her physician, upon seeing her approximately an hour later, made a note in his records that she had a small laceration on the forehead, but he did not make any entry or record of any concussion. Said plaintiff was permitted to leave her physician's office on foot. She testified that she went to work the next morning and felt dizzy, dazed and sick to her stomach and was sent back to see the doctor by Jack Garland. The doctor examined her and sent her to a hospital. Said witness testified that she remembered talking to the police after the collision at the Georgia Street Receiving Hospital, but did not remember what was said. She did not affirm or deny that she told the police officers at that time ''When we were about a half block from the intersection, I noticed the signals and I am sure they were not in operation, but I don't know how they were when we entered the intersection.''

Police Officer Fudge was called as a witness by the defendant. He testified that he and his partner arrived at the scene of the accident at 7:04 a.m.; that the defendant told him, ''I don't know what happened to me. All I remember is I was on my way to work and I remember going east on Twelfth Street and I crossed Main Street, and then I remember turning right or south on San Pedro, I think. My head hurts quite a bit.'' The officer testified that San Pedro Street was on beyond and east of Los Angeles Street; that the defendant was in a very dazed condition. Said witness also testified that he talked to appellants Iola Woods and Rose Ritter at the Georgia Street Receiving Hospital within half an hour after the accident and made notes and reports of what they told him; that Iola Woods told him, ''When we were about a half block from the intersection, I noticed the signals and I am sure they were not in operation, but I don't know how they were when we entered the intersection.'' Rose Ritter told him, ''I think both parties were traveling about the same rate of speed prior to the accident''; that each plaintiff appeared to be perfectly rational and aware of what she was saying; there was no evidence that either of them was dazed. Said officer also testified that marks on the street showed that the impact occurred

28 feet east of the west curb of Los Angeles Street and 14 feet north of the south curb of Twelfth Street.

Captain Durham of the Los Angeles Police Department was called by the defendant and testified that the records of the police department show that at 7:02 a.m. the police received a telephone call reporting the collision at Twelfth and Los Angeles Streets. The original records were produced and it was testified that the time thereon is entered automatically by an electric clock. The said record was contained in a bound volume in which entries were in chronological order by the minute they were received. The record showed that the call went out to police radio car No. 11, occupied by Officers Fudge and Hille, at 7:03 a.m.

A physician called by plaintiffs, a Dr. Rickenberger, testified that it was a common occurrence for one who has been struck on the head and dazed as a result of a blow to suffer an amnesia which destroys his recollection of events immediately preceding the occurrence, perhaps for a few seconds, perhaps for a much longer period.

Respondent Hirsh testified that he suffered a concussion from the collision and did not remember anything that happened. He sustained a blow upon the head and was put to bed at the emergency hospital. The records of said hospital showed that he suffered a concussion. Said respondent introduced photographs of his automobile taken after the accident and identified by the witnesses Fudge and Hille, showing that the damage to his car was confined to the right side thereof, and that no part of the front end thereof was damaged other than the extreme righthand tip of his right front fender.

It is here contended that since "the evidence disclosed no negligence" on the part of appellants or the driver of the automobile with whom they were riding as passengers, "it was reversible error for the jury to bring in a verdict for the respondent, where the only competent evidence in the case disclosed that the respondent drove his automobile through a semaphore signal turned to and remaining at 'stop' during the time" respondent traveled the last 150 feet before his automobile entered the intersection. In this connection, appellants argue that they established by the direct and positive testimony of three disinterested witnesses that the signals were in operation for a considerable time before the collision; and that the evidence introduced by respondent in support of his theory of the case, i.e., that the signals commenced operating

so shortly before the collision that an ordinarily prudent person could not rely upon them,—created "no more than an inference" which was dispelled by the direct and positive evidence produced by appellants. Respondent relied upon (1) the stipulation that the signals were set to go into operation at 7 a.m.; (2) the testimony that the collision was reported to the police department at 7:02 a.m., according to the time stamped on the report by an automatic electric clock; and (3) the testimony of one of the police officers that appellant Iola Woods stated to him that "When we were about half a block from the intersection, I noticed the signals and I am sure they were not in operation, but I don't know how they were when we entered the intersection."

An examination of the settled statement, a recital of which is hereinbefore set out, discloses that much of the evidence introduced by appellants and relied upon by them was impeached and contradicted in many important particulars, and was not of the clear and convincing type required to overcome even an inference as a matter of law. ▮ As was stated in *Huddy* v. *Chronicle Publishing Co.,* 15 Cal.2d 554, 568 [103 P.2d 421] : "It is not the rule that a jury must accept as true all direct evidence offered in opposition to an inference. If the direct evidence to the contrary is not clear, positive, uncontradicted, and is not free from doubt, the jury is entitled to reject it." (See, also, *Tsirlis* v. *Standard Oil Co.,* 32 Cal.App. 2d 469, 476 [90 P.2d 128].)

▮ Again in *Blank* v. *Coffin,* 20 Cal.2d 457, 460 [126 P.2d 868], is found the following pertinent language: "An inference is a conclusion as to the existence of a material fact that a jury may properly draw from the existence of certain primary facts. (Cal. Code Civ. Proc. secs. 1958, 1960, 1832; see cases cited in 10 Cal.Jur. 736-738, sec. 59.) It is not always possible for a party to a lawsuit to introduce evidence directly bearing upon the existence of a fact that he is attempting to prove. The evidence available to him may serve only to establish the existence of certain primary facts that are logically connected with the material fact. If a jury can reasonably infer from these primary facts that the material fact exists, the party has introduced sufficient evidence to entitled him to have the jury decide the issue. The jury is not compelled to draw the inference, however, even in the absence of contrary evidence and may refuse to do so. Whether a particular inference can be drawn from certain evidence is a question of

law, but whether the inference shall be drawn, in any given case, is a question of fact for the jury. (See cases cited in 10 Cal.Jur. 738-739, sec. 60.) . . . The jury, however, is the sole judge of the credibility of the witnesses (Cal. Code of Civ. Proc., sec. 1847; see cases cited in 27 Cal.Jur. 182, sec. 156) and is free to disbelieve them even though they are uncontradicted if there is any rational ground for doing so. (*Hinkle* v. *Southern Pacific Co.*, 12 Cal.2d 691 [87 P.2d 349]; *Barsha* v. *Metro-Goldwyn-Mayer*, 32 Cal.App.2d 556 [90 P.2d 371]; *Burke* v. *Bank of America etc. Assn.*, 34 Cal.App.2d 594 [94 P.2d 58]; *People* v. *La Fleur*, 42 Cal.App.2d 50 [108 P.2d 99]. See cases collected in 27 Cal.Jur. 184, sec. 156; 8 A.L.R. 796.) In most cases, therefore, the jury is free to disbelieve the evidence as to the nonexistence of the fact and to find that it does exist on the basis of the inference. (*Bushnell* v. *Tashiro, supra* [115 Cal.App. 563 (2 P.2d 550)]; *Market Street Ry. Co.* v. *George,* 116 Cal.App. 572, 576 [3 P.2d 41]; *Day* v. *General Petroleum Corp.,* 32 Cal.App.2d 220 [89 P.2d 718].)

"There are many reasons why a jury may refuse to believe a witness. Section 1847 of the Code of Civil Procedure provides: 'A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence; and the jury are the exclusive judges of his credibility.' (Section 2061(3) of the Code of Civil Procedure provides: 'That a witness false in one part of his testimony is to be distrusted in others.' In passing on the credibility of a witness, the jury is entitled to consider his interest in the result of the case. (See cases collected in 27 Cal.Jur. 180, sec. 154.)''

In the instant case, the testimony presented a series of questions of fact, and it was incumbent upon the jury to make an honest effort to arrive at the truth and to discard testimony which for valid reasons impressed them as untrustworthy.

█ It is also urged by appellants that the court committed prejudicial error in giving defendant's instruction numbered 7 to the jury:

"If you find that the automatic traffic signals were operating at the time of the accident but that they began to operate so shortly before the accident that reasonably prudent persons approaching the intersection would not rely thereon, you

should take such fact into consideration in judging the conduct of the drivers in this case. Solely for the purpose of aiding your deliberations, should you decide that the circumstances were such that reasonably prudent persons in the positions of the drivers in this case would give heed to the right of way rule where traffic signals are not in operation, the court states it to you as follows:

" 'The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.

" 'When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right of way to the driver of the vehicle on the right.' "

It is settled law that a party is entitled to have the jury instructed as to his theory of the case, if the facts warrant such instruction. (*Morrow* v. *Mendleson,* 15 Cal.App.2d 15, 21 [58 P.2d 1302].)

Since the jury in the instant cause was entitled to find that the signals had been in operation for less than six seconds before the accident, it was proper for the trial court to inform the jurors what the law in such a case would be.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.