[Civ. No. 6179.   Fourth Dist.   Sept. 26, 1960.]

THE CHURCH OF THE MERCIFUL SAVIOUR (a Corporation), Appellant, v. VOLUNTEERS OF AMERICA, INC. (a Corporation), Respondent.

852

854

Welburn Mayock for Appellant.

Rubin, Seltzer & Solomon and Herbert J. Solomon for Respondent.

COUGHLIN, J.—This is an action alternatively seeking cancellation of a deed to real property; impression of an involuntary trust upon that property; or money damages.

The plaintiff, the Church of the Merciful Saviour, is a California corporation, and the defendant, Volunteers of America, Inc., is a New York corporation. The controversy centers around an alleged promise by the defendant to establish a training school for religious and charitable workers upon the property given it by the plaintiff.

The second amended complaint sets forth two causes of action. The first cause of action contains allegations of fraud based upon the making of the foregoing promise which it alleged constituted a false representation and was made without intention to perform; and also contains allegations of undue influence based upon an alleged confidential relationship existing between the plaintiff and two of its officers on the one hand, and an agent of the defendant on the other hand. The second cause of action incorporates the allegations of the first and alleges that the defendant obtained the property in question "by fraud, undue influence, violation of trust, and by its wrongful acts." The prayer asks for cancellation of the deed; that defendant be declared an involuntary trustee of the property; and for damages "in the event that restitution of the said real property cannot be had."

In a joint pretrial statement, the only contention advanced by plaintiff was that the defendant made the aforesaid promise without intent to perform. At the trial, in addition to the foregoing contention, the plaintiff urged that the evidence established that the deed in question was void because the resolution of its board of directors in the premises authorized only a transfer of the property to the defendant for the purpose of establishing a training school thereon.

The trial court found against the plaintiff on these contentions and also found that it was guilty of laches. Judgment was entered in favor of the defendant. The plaintiff appeals from the judgment presenting "three main points," i.e., (1) that the gift was induced by a promise the donee had no intention of performing; (2) that plaintiff's officers, in executing an unconditional gift of the property, exceeded their authority and performed a void act; and (3) that no laches existed. As an incident to its presentation of these contentions, the plaintiff also claims that the evidence establishes its allegation of undue influence.

In substance, the plaintiff attacks the sufficiency of the evidence to support the findings of the trial court and urges

that the evidence establishes its charge of fraud, undue influence and void execution of the deed as a matter of law.

When the sufficiency of the evidence to sustain a finding of fact is contested on appeal, the issue thus presented is whether there is any substantial evidence, direct or indirect, contradicted or uncontradicted, which will support the finding. (*Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231]; *Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593]; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].) It is assumed that the trial court resolved every factual conflict in favor of the prevailing party. (*Thomas* v. *Hunt Mfg. Corp.,* 42 Cal.2d 734, 736 [269 P.2d 12]; *Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593]; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].) Every inference reasonably deducible from the evidence which will support the finding must be accepted, whereas those which support a contrary conclusion must be rejected. (*Hamilton* v. *Pacific Elec. Ry. Co.,* 12 Cal.2d 598, 602 [86 P.2d 829]; *Wilbur* v. *Wilbur,* 197 Cal. 1, 7 [239 P. 332]; *State of California* v. *Day,* 76 Cal.App. 2d 536, 549 [173 P.2d 399]; *Garland* v. *Hirsh,* 74 Cal.App.2d 629, 636 [169 P.2d 405].) Similar rules apply in determining whether the evidence establishes a fact as a matter of law.

To establish a fact as a matter of law, the state of the record must be such that any finding to the contrary would be reversed on appeal because, applying the rules heretofore noted, the evidence is insufficient to sustain such contrary finding. (*McBride* v. *Atchison, Topeka & S.F. Ry. Co.,* 44 Cal.2d 113, 116 [279 P.2d 966]; *Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768]; *Rowe* v. *Edwards,* 152 Cal.App.2d 648, 653 [313 P.2d 82].) Unless the evidence admits of but a single conclusion the question presented is not one of law but of fact. (*Hudson* v. *Rainville,* 46 Cal.2d 474, 477 [297 P.2d 434]; *Martinez* v. *Southern Pacific Co.,* 45 Cal.2d 244, 248 [288 P.2d 868]; *Bowman* v. *Collins,* 181 Cal.App.2d 807, 810 [5 Cal.Rptr. 776]; *Clapp* v. *Hester,* 169 Cal.App.2d 558, 560 [337 P.2d 525]; *Ray* v. *Hanisch,* 147 Cal.App.2d 742, 750 [306 P.2d 30]; *Benjamin* v. *Rutherford,* 146 Cal.App.2d 561, 562 [303 P.2d 1079]; *Winn* v. *Ferguson,* 132 Cal.App.2d 539, 543 [282 P.2d 515].) Conflicts in the evidence, conflicting interpretations thereof and conflicting inferences which reasonably may be drawn therefrom, present issues of fact for determination by the trier of fact who "is the sole judge of the credibility of the witnesses"; may "disbelieve

them even though they are uncontradicted if there is any rational ground for doing so''; and, in the exercise of a sound legal discretion, may draw or may refuse to draw inferences reasonably deducible from the evidence. (*Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868]; *Gray* v. *Southern Pacific Co.*, 23 Cal.2d 632, 640 [145 P.2d 561]; *Juchert* v. *California Water Service Co.*, 16 Cal.2d 500, 508 [106 P.2d 886]; *Garland* v. *Hirsh*, 74 Cal.App.2d 629, 636 [169 P.2d 405].) The evidence in this case must be stated in the light of the foregoing rules on appeal.

Although not directly stated, it satisfactorily appears that the property in question originally was owned by Dr. and Mrs. Arthur W. Yale. Subject to the right of Dr. Yale to use a part of the premises as a home and another part as a medical center, the property was transferred to the Yale Foundation, a charitable corporation, of which they were the principal founders; in turn was transferred to the Church of the Merciful Saviour, a religious corporation, of which they also were the principal founders; and subsequently was transferred to the defendant.

Some time during 1950, Dr. Yale met H. Mills Eroh, who was a priest in the Byzantine Orthodox Church of America, a Lieutenant Colonel in the National Society of the Volunteers of America, an unincorporated, philanthropic association, and the executive director of the Volunteers of America at Los Angeles, a separate corporate entity. The National Society was the parent organization of which the defendant corporation was a business agency. Eroh was not an officer of the defendant corporation. Eventually he became treasurer of the Yale Foundation and president of the Church of the Merciful Saviour.

During the years 1951 and 1952 preliminary discussions took place respecting a transfer of the subject property to the defendant, and its use thereof. At this time, according to the allegations of the second amended complaint, Dr. and Mrs. Yale were officers and members of the plaintiff, *i.e.*, the church corporation, which then owned the property. It is noteworthy that in all of the letters and in all of the conversations concerning this matter, both before and after the execution of the deed to the defendant, Dr. Yale was the only participant on behalf of the church. The trial court found that, during all of this time, Dr. Yale was the agent of the plaintiff and acted on its behalf in connection with the conveyance to de-

fendant. The pleadings and the evidence fully support this finding.

Originally, the property was offered to the defendant for use as a hospital. This offer was turned down for the reason, among others, that the defendant did not want to accept property subject to any conditions respecting its use. Thereafter, on at least three occasions, as evidenced in letters written by Dr. Yale, an offer was made to transfer the property to the defendant without restriction as to its use. In one of these letters it was said:

"The best use of the facilities and land would be a matter for the Volunteers of America to decide in accordance with community needs and the organization's ability to staff, support and operate Christian and Welfare activities."

During the course of the discussions which ensued, it appeared that the defendant might use the property as an officers' training school. Dr. Yale testified that Eroh told him that if the property were given to the defendant "they" would establish a school thereon. On June 20, 1952, the conveyance under consideration was effected by an unconditional deed. The court found that before the transfer was made, the "defendant stated that it intended to establish an officer's training center for the Volunteers of America on said property during the month of September, 1953"; but that it never *promised* to establish such a school. The court also found that, at the time the defendant stated it intended to establish a training school as aforesaid, it "had the intention to establish such an officer's training center on said property during the month of September, 1953."

Plaintiff's case of fraud is built upon the legal premise that, "A promise made without any intention of performing it" constitutes actual fraud. (Civ. Code, § 1572, subd. 4.) ▪ Whether the defendant's declaration of its intention to establish a training center amounted to a promise within the provisions of the law defining actual fraud is of no consequence to the decision in this case, because of the court's determination that such intention actually existed. If the defendant's declaration constituted a promise, it was a promise which, when made, it intended to perform. There is an abundance of evidence to support this conclusion. Statements by General Booth, president of the defendant corporation, which were made both before and after the transfer, indicated an ardent wish that an officers' training center would be estab-

lished as planned. The events occurring immediately after the conveyance are proof of the good faith of the declarations made. An officer of the defendant organization was assigned to the project as superintendent; he and his wife took up residency in San Diego in January, 1953; numerous Bible schools and similar institutions were contacted in the development of administrative admission procedures and a curriculum; plans for remodeling and extending the buildings on the property were made; such remodeling was commenced, although not completed; some furniture and equipment were purchased and installed; a fund was set up for the support of the center, with contributions on a national basis; and the whole matter was publicized in local newspapers as well as in the Volunteers Gazette, the defendant's national publication. Four officers of the defendant corporation testified that it was their personal intention as well as the intention of the board that such a training center should be established; and three of them expressed the hope and belief that it still would be established. However, various obstacles prevented the opening of the center at the time planned. It was discovered that one of the larger buildings on the premises, which had been intended for use as a girls' dormitory, was subject to a lease which did not expire until 1954. Legal action was taken with respect to eviction of the tenant under this lease. Difficulties in obtaining recruits for such a school were encountered. In addition, according to the testimony of one of the witnesses, Dr. Yale's interference was an obstructing factor.

A declaration of intention, although in the nature of a promise, made in good faith, without intention to deceive, and in the honest expectation that it will be fulfilled, even though it is not carried out, does not constitute a fraud. (*Meehan* v. *Huntington Land & Imp. Co.*, 39 Cal.App.2d 349, 354 [103 P.2d 196].)

The essence of an action such as the one at bar is the existence of an intent at the time of the making of the promise not to perform it. (*Schott* v. *Schott*, 168 Cal. 342, 345 [143 P. 595]; *Becker* v. *Schwerdtle*, 141 Cal. 386, 390 [74 P. 1029]; *Kejr* v. *Construction Engineers, Inc.*, 128 Cal.App. 2d 396, 400 [275 P.2d 529].) The mere failure to perform a promise made in good faith does not constitute fraud. (*Newman* v. *Smith*, 77 Cal. 22, 26 [18 P. 791]; *Lawrence* v. *Gayetty*, 78 Cal. 126, 131 [20 P. 382, 12 Am.St.Rep. 29]; *Becker* v. *Schwerdtle, supra,* 141 Cal. 386, 390; *Ampuero*

v. *Luce,* 68 Cal.App.2d 811, 816 [157 P.2d 899]; *Bouey* v. *Porterfield,* 96 Cal.App. 674, 678 [274 P. 766].) Nevertheless, in support of its position plaintiff relies entirely upon the fact that the training center has not been established, contending that such fact is conclusive proof that the defendant never intended to establish such a center. ▮ There is a divergence of opinion as to whether proof of nonperformance of a promise, by itself, is sufficient to sustain a finding that the promisor at the time he made the promise did not intend to perform. (*Cf. People* v. *Ashley,* 42 Cal.2d 246, 263 [261 P.2d 271]; *Longway* v. *Newbery,* 13 Cal.2d 603, 611 [91 P.2d 110].) However, such proof is not conclusive but, at most, only warrants an inference of the existence of an intention not to perform. (*Kejr* v. *Construction Engineers, Inc., supra,* 128 Cal. App.2d 396, 400; *Cox* v. *Klatte,* 29 Cal.App.2d 150, 161 [84 P.2d 290]; *Benson* v. *Hamilton,* 126 Cal.App. 331, 334 [14 P.2d 876].) ▮ In the instant case, any inference based on evidence of nonperformance which is adverse to the findings merely created a conflict with other evidence which supports the findings. Under these circumstances, the determination of the trial court is final. (*Aronson & Co.* v. *Pearson,* 199 Cal. 295, 303 [249 P. 191]; *Benson* v. *Hamilton, supra,* 126 Cal. App. 331, 334.)

▮ In its closing brief plaintiff makes the additional contention that the court erred in not finding that defendant's conduct was "fitted to deceive" the plaintiff and thus within the provisions of subdivision 5, section 1572 of the Civil Code which includes within the definition of actual fraud, "Any other act fitted to deceive." The pleadings did not purport to bring this case within the rule relied upon and the findings of the court, which are adequately supported by the evidence, establish that the defendant had no intention to defraud the plaintiff.

The plaintiff also contests the sufficiency of the evidence to sustain the findings of the trial court that the declaration in question did not constitute a promise; was not a material representation; was not relied upon by plaintiff; and did not result in damages. However, it is not necessary to pass upon these objections. Even though the contested findings were not supported by the evidence, the judgment upon the issue of fraud, nevertheless, must be affirmed because the adverse finding of the trial court upon plaintiff's allegation that the alleged promise of the defendant was made without intention

of performing it is determinative of that issue. ▮ It is the rule on appeal that ''if in any case there be one clear, sustained and sufficient finding upon which the judgment may rest, every presumption being in favor of the judgment, it will be here concluded that the court did rest its judgment upon that finding, or those findings, and the others may and will be disregarded.'' (*American National Bank* v. *Donnellan*, 170 Cal. 9, 15 [148 P. 188, Ann.Cas. 1917C 744]; *Estate of Cummins*, 130 Cal.App.2d 821, 832 [280 P.2d 128]; *Brewer* v. *Simpson*, 53 Cal.2d 567, 584 [2 Cal.Rptr. 609, 349 P.2d 289].)

The trial court found that a confidential relationship existed between the plaintiff and H. Mills Eroh; that, at all times, Eroh was acting on behalf of and for the benefit of the plaintiff; that he was not acting on behalf of the defendants in any manner; and that no undue influence existed. ▮ The finding of such a confidential relationship did not necessitate a further finding that this relationship existed between the plaintiff and the defendant. The evidence sustains the finding that Eroh was not acting on behalf of the defendant in connection with the transaction under consideration, and justifies the conclusion implicit therein that his relationship to the defendant was not a motivating factor of his conduct in connection therewith. ▮ Moreover, the existence of a confidential relationship between the parties to a transaction does not dictate the ultimate conclusion that a gift from one to the other was obtained by undue influence, even though it may give rise to a rebuttable presumption to that effect. (*Barney* v. *Fye*, 156 Cal.App.2d 103, 107 [319 P.2d 29]; *Camperi* v. *Chiechi*, 134 Cal.App.2d 485, 504 [286 P.2d 399]; *Goldman* v. *Goldman*, 116 Cal.App.2d 227, 237 [253 P.2d 474]; *Azevedo* v. *Leavitt*, 76 Cal.App.2d 321, 324 [172 P.2d 704].) Such a presumption is overcome by proof that the transaction was fair and free from undue influence. ▮ Whether the presumption has been overcome is a question exclusively for the trial court and in reviewing its decision the rules on appeal heretofore noted are applied. (*Camperi* v. *Chiechi, supra,* 134 Cal.App.2d 485, 504; *Azevedo* v. *Leavitt, supra,* 76 Cal.App.2d 321, 324.) ▮ The finding of the trial court in the instant case, that the gift to defendant was not the result of undue influence, is fully supported by the evidence. The communications and discussion between Dr. Yale and the various officers of the defendant corporation, clearly indicate a desire upon his part that the

defendant should have the property in question to use in its work for whatever purpose it might deem best. There is no showing that Eroh induced this desire. Dr. Yale was told that the defendant would not accept gifts of property conditioned upon a restrictive use thereof; that Eroh had no authority to act on behalf of the defendant corporation; and that the acceptance of gifts was not a matter for decision by any individual member of the defendant's board but only by the board itself.

The legal papers necessary to effect the transfer in question were prepared by a Mr. Moote who, although a friend of Mr. Eroh and a member of the Los Angeles Volunteers of America Board, was also a friend of Dr. Yale. In this regard it is noteworthy that the secretary of the plaintiff's board of directors, who certified to the passing of the resolution authorizing the execution of the deed under consideration and who joined with Eroh in signing that deed, is a practicing attorney.

As evidence of undue influence the plaintiff refers to alleged misconduct upon the part of Eroh in handling some of the business affairs of Mrs. Yale. The actuality of this fact is contested by defendant. At any rate, it is not persuasive proof of undue influence upon the plaintiff corporation.

There is no showing that Eroh brought any pressure upon Dr. Yale or any other member of plaintiff's board of directors which caused them to make the gift in question. The significance of Eroh's participation in the transaction dwindles to inconsequentiality when compared with Dr. Yale's dominating activity.

The plaintiff's third contention is that the deed was void because the resolution authorizing its execution granted authority only to convey the property for the purpose of establishing a training center thereon.

The resolution in question recites that the defendant corporation "has offered to take over certain of the properties" of the plaintiff corporation "and use it for a training school for religious workers and for other religious and charitable purposes"; resolves that the plaintiff corporation transfer the property in question to the defendant corporation; and authorizes the president and secretary "to execute any and all instruments, without seal, necessary to carry out this Resolution."

The plaintiff contends that the recital in the aforesaid resolution controlled and limited the authority granted to its president and secretary to the execution of a deed which would

convey the property to the defendant for school purposes only. The trial court found to the contrary, holding that the president and secretary were authorized to execute an unconditional conveyance. This finding was in accord with the intention expressed by Dr. Yale in the discussions prior to acceptance of the gift by the defendant. Reference again should be made to the fact that the secretary of the plaintiff corporation was a practicing lawyer. It is reasonable to assume that if the plaintiff's board of directors intended to authorize only a conditional conveyance their secretary, under the circumstances, would have advised the drafting of a resolution which clearly stated their intention and would not have participated in the execution of an unconditional conveyance. The interpretation placed on the resolution by Dr. Yale, who was a member of the board adopting it, also supports the conclusion of the trial court. On June 5, 1952, which was about 10 days after adoption of the resolution, he wrote General Booth inquiring as to whether the defendant wished to lease 5 acres of the property for the erection of an auto and trailer court on a 25 per cent gross income basis. This inquiry is inconsistent with the belief that the defendant's ownership was limited to use for a particular purpose. Also of note is the fact that on September 8, 1952, the defendant executed a document entitled "Agreement Respecting Acceptance of Property" which was endorsed "Accepted: Arthur W. Yale." Under this agreement, among other things, the lease of the clinic building to Yale by the Yale Foundation was continued in force with certain modifications; use of the premises occupied by the church was agreed upon; provision was made to permit Dr. Yale to "keep the quarters now occupied by him for a residence, free of charge for rent or utilities"; and the defendant promised that, should it sell the property and invest the proceeds in another property of similar character, a chapel would be erected thereon and dedicated to the memory of Mrs. Yale. Nowhere in this agreement is there any mention of a conditional conveyance, or that the property was to be used as a training center. In January, 1954 the defendant leased to the Yale Foundation that portion of the premises used by Dr. Yale as a clinic. The lease provided that a part of the rent should be used to maintain the church and its furnishings in first class condition. In an addenda, which was executed by the defendant, the Yale Foundation and Dr. Yale, the following appears:

"All prior agreements and understandings between the parties are hereby merged herein. This lease cancels and supersedes as of its effective date all agreements or understandings between Dr. Arthur W. Yale, the Church of the Merciful Saviour, the Yale Foundation, on the one hand, and the Volunteers of America on the other hand."

The conduct of the participants in the foregoing incidents is inconsistent with plaintiff's contention respecting the intent of the resolution adopted by its board of directors of which, as heretofore noted, Dr. Yale was a member.

If the recitals in this resolution, the resolve of the plaintiff corporation to transfer certain property to the defendant without expressing any intention to limit the purpose for which that property might be used, and the language conferring authority upon the corporate officers to execute such instruments as might be necessary to carry out the resolution are considered together, several ambiguities at once are apparent in that, (1) although the resolution states that the defendant "offered" to take over certain property of the plaintiff and use it for a training school and other religious purposes, it does not state that the defendant *promised* to use this property only for these purposes or that it would accept the property conditioned upon its use only for these purposes, or that its "offer" indicated anything more than a declaration of its present intention, and (2) if it was the intention of plaintiff's board to convey such property only upon condition that such "offer" was complied with, that part of the resolution declaring its intention "resolved" only that the plaintiff transfer the property to the defendant without expressing any limitation upon its use. Under these circumstances, the extent of the authority conferred upon the president and secretary to execute an unconditional deed to the defendant was a question of fact for determination by the trial court, which had been decided adversely to plaintiff's contention.

Our approval of the decision of the trial court on its merits, renders unnecessary a consideration of plaintiff's attack upon the findings in favor of the defense of laches. (*Berri* v. *Berri,* 54 Cal.2d 407, 418 [5 Cal.Rptr. 857, 353 P.2d 569].)

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.