Filed 2/26/14  Gibson v. Gilani CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| NATASHA GIBSON,<br><br>     Plaintiff and Respondent,<br><br>  v.<br><br>POOYA GILANI,<br><br>     Defendant and Appellant. | B246809<br><br>(Los Angeles County<br> Super. Ct. No. GQ009105) |


   APPEAL from the order of the Superior Court of Los Angeles County.  Mary Thornton House, Judge.  Affirmed.


   Tabibnia Law Firm and Cyrus S. Tabibnia for Defendant and Appellant.


   No appearance for Plaintiff and Respondent.


\* \* \* \* \* \* \* \* \* \*

Plaintiff Natasha Gibson sought a civil harassment restraining order against defendant Pooya Gilani, claiming her former boyfriend sent threatening text messages to her and showed up at her work uninvited. Finding clear and convincing evidence in support of the requested order, the trial court issued a permanent restraining order. On appeal, defendant contends insufficient evidence supports the order, and that the trial court relied on inadmissible hearsay. We conclude there is substantial evidence supporting the order, and that defendant waived his right to appeal the admission of any hearsay testimony because he did not object on this basis in the trial court. We therefore affirm.

## FACTS

Plaintiff testified that she and defendant dated for four years. They ended their relationship in February 2012. Shortly after they broke up, plaintiff received threatening text messages from defendant. On February 2, 2012, defendant texted, "If you've gone to the gym again, you're in big trouble. If so, then you're forbidden going to the gym for one entire week since you did not do what I asked you." On February 4, 2012, defendant texted, "If you are ready to take the punishment, let me know." Plaintiff later received texts urging her to meet with defendant "face-to-face." For example, on March 23, 2012, defendant texted, "If you don't provide us a time, I'm going to your home now, then to Macy's where [plaintiff] works, all your friends until I find you." Defendant also showed up at plaintiff's home and refused to leave for 45 minutes. Plaintiff and her mother moved from Burbank to Glendale "to get away from [defendant]" because they felt "a little bit scared" and "bothered" by defendant.

Defendant did not contact plaintiff between April 24, 2012, and October 11, 2012, when she received an e-mail from him stating that he wanted to give her a letter. She did not respond to this e-mail. Defendant sent plaintiff a second e-mail on October 13, 2012, asking why plaintiff had not responded to his first e-mail. Once again, plaintiff did not respond.

On October 19, 2012, defendant unexpectedly showed up at the Macy's where plaintiff worked. Plaintiff's co-workers were watching the encounter, as plaintiff "had previously told [her] co-workers about this stalking situation beforehand." Plaintiff told

2

defendant "it was completely inappropriate" to show up at her workplace. She "was a little uncomfortable and scared about it." Defendant told plaintiff that he still wanted to give her a letter, but had not brought it with him. Defendant also "threatened to kill himself" if plaintiff did not resume the relationship.

The next day, defendant returned to the Macy's parking lot to give plaintiff the letter and a gift. Plaintiff told defendant that she did not want to have contact with him and that "the next time he shows up to my workplace, I will call the police. But he said he has to see my face."

The following day, plaintiff received a text message from defendant asking if she liked the perfume he had given her. Plaintiff did not respond "because I told him, if he texted me, I'm not going to respond." Defendant sent plaintiff an "angry" text message that night, "explaining that he went to several stores looking for the perfume and [plaintiff] should tell him if [she] liked it or not." Plaintiff responded, telling defendant "this [was] the last time I'm going to tell you to stop bothering me . . . or I will go straight to the police station." Defendant immediately responded, stating "I would never want to bother you. I just want to make you happy. Buying gifts and sending you beautiful texts, if the price of that is going to jail, I'll gladly take it." Later that night, defendant sent plaintiff an e-mail stating that he would e-mail her every Monday.

On October 21, 2012, defendant "followed [plaintiff] with his car at school scaring [her] to death," weaving in and out of his lane. Defendant was yelling to plaintiff, trying to get her attention. Plaintiff immediately drove to the campus police department because she "felt threatened all the way to school."

After the driving incident, plaintiff received two more text messages from defendant. The first message read, "K Tasha. I got you. Give me back my letter and guitar back, and you won't see or hear from me ever again. No Monkey business. As soon as you hand them over, I'll be gone forever." The next message read, "You want to get rid of me? That is easier than ever. YOU GIVE ME MY STUFF BACK RIGHT NOW AND I DISAPPEAR FOREVER RIGHT NOW."

Plaintiff testified that she ended the relationship with defendant in February 2012 because he was "very abusive toward me verbally and physically." Once, defendant

3

jammed his key into her arm and would not let her leave his car because they had gotten into an argument. Plaintiff did not feel safe anywhere because she never knew when defendant was going to show up, noting that they attended the same school. Plaintiff and her mother were scared because of defendant's history of violence towards her and that "[n]o matter what I say, he does not leave me alone." Plaintiff felt that court intervention was her only option.

Defendant testified that the relationship ended on April 24, 2012, and that all his messages to plaintiff before that time did not constitute harassment, because they were "working through" problems in their relationship. According to defendant, "It was so important for me to protect our friendship and relationship." Defendant only met plaintiff twice after they broke up, on October 19 and 20, 2012, when he went to plaintiff's work to give her the letter and perfume. Defendant went to see her "to avoid any hatred or hostility between us." Plaintiff was not scared during these meetings, and had agreed to meet him on October 20, 2012, telling him "okay, come tomorrow, give it to me, and that's it." During the October 20, 2012 meeting with defendant, plaintiff accepted the letter and gift, agreed to them saying hello to one another if they saw each other at school, and exchanged cell phone numbers with defendant.

Regarding the driving incident, defendant saw plaintiff's vehicle next to his at the red light. After four years of dating, "it came naturally to just shake my hand and say -- you know, say hi." When plaintiff noticed defendant, she showed him her middle finger. Defendant then realized plaintiff "[didn't] feel comfortable" and "[wasn't] happy seeing me." Plaintiff changed lanes to avoid defendant, and he remained in his lane on the way to school. Seeing plaintiff at this red light was coincidental.

After the encounter, defendant returned home and sent plaintiff a text message asking that she return a guitar that belonged to him. After that text, defendant had not approached or contacted plaintiff except to attempt to get his guitar back.

Defendant denied plaintiff's claim that he was abusive, stating plaintiff "was verbally abusive too." Plaintiff used the "F" word, and once bent his index finger back to the point of almost breaking it. The "punishment" referred to in one of his text messages to plaintiff was his refusal to speak with plaintiff for a few days. Defendant sent these

4

messages because with all the time plaintiff spent at the gym, he realized they were not seeing each other anymore and "could see [their] friendship being in danger." "I couldn't just after four years just give it up completely without even hearing her giving me at least a couple reasons why she wants to break up with me or why she doesn't want to see me anymore." Defendant believed plaintiff must "talk to [him] face-to-face" and that he "[didn't] see anything wrong with that."

The court issued the permanent restraining order preventing defendant from having any contact with plaintiff for a period of three years.

This timely appeal followed.

## DISCUSSION

Defendant contends the restraining order was not supported by substantial evidence. More specifically, defendant claims that plaintiff did not prove that "great and irreparable injury" was suffered or imminent or that a reasonable person in plaintiff's position would have suffered emotional distress because "[h]er whole case rested on her own testimony, which was rife with hearsay, exaggerations, and contradictions."

Code of Civil Procedure section 527.6 provides harassment victims with an expedited procedure for "limited-scope" and "limited-duration" injunctions. (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 807.) The statute " 'authorizes a "person who has suffered harassment" to obtain a [TRO] and injunction against the harassing conduct and provides an expedited procedure to obtain such an injunction . . . .' . . . The elements of unlawful harassment, as defined by the language in section 527.6, are as follows: (1) 'a knowing and willful course of conduct' entailing a 'pattern' of 'a series of acts over a period of time, however short, evidencing a continuity of purpose'; (2) 'directed at a specific person'; (3) 'which seriously alarms, annoys, or harasses the person'; (4) 'which serves no legitimate purpose'; and (5) which 'would cause a reasonable person to suffer substantial emotional distress' and 'actually cause[s] substantial emotional distress to the plaintiff.' " (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762, citations omitted.) A "course of conduct" includes sending harassing correspondence to an individual by any means. (§ 527.6, subd. (b)(1).)

The clear and convincing evidence standard found in section 527.6 is not incorporated into the standard of review on appeal. (See *Crail v. Blakely* (1973) 8 Cal.3d 744, 750; *In re Marriage of Ruelas* (2007) 154 Cal.App.4th 339, 345.) Instead, we review whether the trial court's findings are supported by any substantial evidence in the record. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.) "We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin, supra,* 232 Cal.App.3d at p. 762.) Credibility is an issue for the fact finder, and as such, we do not reweigh evidence or reassess the credibility of witnesses. (*Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 915.) "Conflicts in the evidence, conflicting interpretations thereof and conflicting inferences which reasonably may be drawn therefrom, present issues of fact for determination by the trier of fact who 'is the sole judge of the credibility of the witnesses.' " (*Church of Merciful Saviour v. Volunteers of America, Inc.* (1960) 184 Cal.App.2d 851, 856-857.)

Defendant correctly notes that to obtain an injunction under section 527.6, great or irreparable harm must be proven. (*Nebel v. Sulak* (1999) 73 Cal.App.4th 1363, 1369.) There was sufficient evidence of plaintiff's mounting fear over a period of eight months -- so extreme as to require her and her mother to move their residence, and to make plaintiff feel it was necessary to alert her co-workers to the risk of being stalked at a Macy's department store -- to support a reasonable inference that defendant's conduct caused plaintiff actual emotional distress. (*Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105, 1110-1111 [rejecting substantial evidence challenge where court could reasonably infer from the record that repeated phone calls and threatening letters from the defendant caused the plaintiff "significant" emotional distress].)

Defendant had verbally and physically abused plaintiff during their relationship. He texted plaintiff that she was "forbidden" from going to the gym, threatening "punishment," and threatening to show up at plaintiff's home and work if she "didn't make time" to talk with him face-to-face. Defendant showed up at plaintiff's home, unannounced, and refused to leave for 45 minutes. Plaintiff was so distraught that she

6

and her mother moved from Burbank to Glendale to get away from defendant.  After having no contact from April to October, defendant sent two e-mails to plaintiff.  When plaintiff chose not to reply to the e-mails, defendant unexpectedly showed up at plaintiff's place of employment on two successive days.  Despite plaintiff's pleas for defendant to stop contacting her, and her warning that she would seek police intervention, defendant continued to contact her via text message, and threatened to continue sending e-mails every Monday.  Defendant even told plaintiff that, "Buying gifts and sending you beautiful texts, if the price of that is going to jail, I'll gladly take it."  This evidence reasonably supports a finding that defendant engaged in a course of conduct that annoyed, harassed and scared plaintiff, while serving no legitimate purpose.

Defendant also claims the trial court erred in permitting inadmissible hearsay during plaintiff's testimony, when the trial court allowed plaintiff to testify to the content and tone of various text messages.  Defendant contends the court should have "either had the [text] messages authenticated or merely asked to analyze them in order to deduce their meaning and tone, instead of having a biased party, such as [plaintiff], frame them as she saw fit."  Defendant's failure to object at the hearing results in a forfeiture of this claim on appeal.  (Evid. Code, § 353, subd. (a); see also *People v. Alexander* (2010) 49 Cal.4th 846, 908.)  And, in any event, Code of Civil Procedure section 527.6 authorizes admission of hearsay evidence.  (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 728-729.)

## DISPOSITION

The order is affirmed.  Respondent is awarded costs on appeal.


GRIMES, J.

We concur:


RUBIN, Acting P. J.


FLIER, J.

7