[Crim. No. 6367.   Second Dist., Div. One.   June 29, 1959.]

THE PEOPLE, Respondent, v. HARRY TREGGS,
Appellant.

Harrison M. Dunham, under appointment by the District
Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, appellant and one Bennye Treggs were accused of the crime of robbery (Pen. Code, § 211), in that they did, on October 12, 1957, forcibly take from James F. Moore, a deliveryman, $2.00 in a money-changer, $90 in money from his person, and cookies valued at 23 cents. Both were also accused of being armed with a revolver, and of having suffered a prior felony conviction under section 470 of the Penal Code.

Appellant pleaded not guilty and the prior conviction was admitted. The cause was tried before a jury which returned a verdict finding appellant guilty of first degree robbery, and that he was not armed at the time of the commission of the offense. The codefendant Bennye Treggs was acquitted. Appellant's motion for a new trial was denied and he was sentenced to state prison. This appeal is prosecuted from the judgment and the order denying appellant's motion for a new trial.

As to the factual background surrounding this prosecution the record reflects that James Francis Moore, a distributor and salesman of bakery products for Helms Bakeries, on the evening of October 12, 1957, between 6 and 7 o'clock, was in the vicinity of the two hundred block on East 70th Street, in the city of Los Angeles, where, according to his statement, "I was robbed." Identifying appellant as one of the persons present during the robbery, the witness testified, "Well, I was riding down the street blowing the truck whistle . . . and a lady walked from the shadows . . . And walked toward the street. At first I wasn't positively sure that she wanted something, and she was walking right toward the truck. And she put her hand up, and I stopped. And she got in the truck and asked me for a dozen mixed cookies, which I proceeded to put in a bag." Mr. Moore identified the lady as appellant Treggs' codefendant, Bennye Treggs. The lady was in the truck "somewhere between two and three" minutes, he said. And he had an opportunity to see her for 30 or 40 seconds.

The witness said that the truck was well lighted inside, though it was dark outside. As the woman left the truck, a man stepped in from the sidewalk side and put a gun in his back. The witness testified that, ". . . when I saw the gun come in the door, I didn't pay much attention to how she left or what she took with her, or anything else."

The man with the gun did not get in the truck. "He was rather tall and he stood in the street with the gun in my back."

The witness was told to lie down on the floor of the truck and "at the moment" or "thereabouts" appellant Treggs "came in from the street side." Moore noticed him with "just an upward glance" for the space of a few seconds, while he was "rifling my cash drawer in my truck."

Treggs spoke to Moore: "There's some more some place. Where is it?" And Moore told him.

Mr. Moore testified that he stated that his boss had taken about half of the money some two hours previously. Appellant Treggs asked, "Do you swear to that?" And Moore responded, "Yes, I do," while raising his hands.

The two men also took the contents of Moore's pockets, about 10 to 15 dollars in half dollars, and sausage cans filled with change, besides the contents of the cash drawer, and a money-changer.

Mr. Moore said he thought he told the lady the cookies cost 23 cents. "I handed her the cookies; I most surely would have asked her for 23 cents." But Moore didn't remember whether he got the 23 cents or not.

After collecting the money, the two men took off down a side street after warning Moore not to get up. If he tried to get up and run after them or holler they told him they would shoot him. The men did not "rough up" Moore. A few minutes later Moore called the police. He picked appellant Treggs out of a group of five or six male Negroes at the police station. He also picked out Bennye Treggs from a group of three other Negresses.

The bakeryman said that he had seen a picture of the co-defendants previously in the office of Sergeant Aure, of the sheriff's office. "Well it really wasn't shown to me, sir. I happened to see it accidentally. He had it in the center desk drawer, and he happened to open it, and I happened to see it; and I made an identification." Concerning the identification of appellant by Mr. Moore, there was testimony that the latter saw the former "Just momentarily . . . Just a few seconds." The witness had been robbed on three other occasions. At the trial it was brought out that at the preliminary examination, the witness was asked whether he had ever seen appellant before the occasion here in question, and he answered, "I can't say for sure. I thought I had, but I am not going to say for sure. I'm not positive. In other words, I'll put it that way." At the trial Mr. Moore was asked in connection with his statement that he had seen appellant on a previous occasion when he was robbed, ". . . Now, as a matter of fact, you

weren't robbed before October 12th by Harry Treggs (appellant) were you?'', to which the witness replied, ''As a matter of fact I wasn't.''

The victim of the robbery was also present during a conversation between appellant and Sergeants Aure and Human of the sheriff's office. With regard to that conversation, Mr. Moore testified:

''Q. All right. And did he answer you freely and voluntarily? A. Yes, he did.

''Q. Did you hear any promises of reward or lesser sentence, of probation, or anything? A. No, I did not.

''Q. And everybody was on good terms? A. Yes, sir, everything was very cordial.

''Q. And was there any threats of force or use of force, or anything like that, that you know of? A. Not to my knowledge, no sir.''

The witness then testified further:

''I can't remember, sir, in detail; but he (Treggs) did—he did admit his participation in it; and as a matter of fact, he even volunteered the amount of money that he had gotten. He estimated between eighty and eighty-five dollars.''

According to Moore, appellant Treggs also said that he had told Moore that if Moore cooperated with him he wouldn't be hurt, and he wasn't.

Sergeant Aure of the sheriff's office also testified as to the conversation between Moore, Treggs, Sergeant Human and himself. According to Aure, the conversation was free from threats of force or coercion and conducted on ''good terms.''

The sergeant recounted that Moore told his story of the robbery, concluding by saying (pointing at appellant Treggs) ''You came in the other door and took the money.'' Sergeant Aure asked appellant Treggs if this were true, and the latter responded that it was.

According to Sergeant Aure, appellant added: ''I didn't hurt you, or I didn't push you around, did I,'' and the victim stated, ''No.'' According to Sergeant Aure, Treggs estimated his profit from the theft at between 80 and 90 dollars.

Appellant did not testify as a witness in his own behalf and offered no evidence other than a stipulation regarding testimony adduced at the preliminary examination.

█ Appellant's sole ground for reversal of the judgment and order is that the evidence is insufficient as a matter of law, to sustain his conviction.

Much of what we said in the companion case against appellant this day filed (*ante*, p. 537 [341 P.2d 342]) is applicable to the instant action. As in the case just cited, appellant herein relies upon the cases of *People* v. *Draper*, 69 Cal.App. 2d 781 [160 P.2d 80], and *People* v. *Graziano*, 83 Cal.App.2d 701 [189 P.2d 518], and insists that, as in those cases, the evidence against appellant merely ''points the finger of suspicion at him.'' With this contention we cannot agree because in the instant action a positive identification of appellant was made by the victim, and in conversations with the victim and the officers, appellant admitted his participation in the crime with which he was charged. The vital difference in the evidentiary features of the aforesaid cases relied upon by appellant and the case at bar is that in the *Draper* and *Graziano* cases, *supra*, the appellate court held that the evidence did not connect the accused with the crime charged against him, while in the case now engaging our attention, appellant's connection with the crime was established by direct evidence of the victim, coupled with the admissions of the former.

Appellant also questions the manner in which the officers had the victim identify him, in that prior to the time the former identified the latter in a ''line up,'' the officers had shown the victim a picture of appellant. However, in that regard, the victim testified, as heretofore pointed out, ''Well, it (appellant's photograph) wasn't shown to me, sir. I happened to see it accidentally. He had it in the center desk drawer, and he happened to open it, and I happened to see it; and I made an identification.'' Deputy Sheriff Aure corroborated this. It should also be remembered that identification alone is not relied upon to sustain this conviction.    There was also appellant's tacit admission of his guilt, and that alone, independent of the identification made by the victim, is sufficient to sustain the verdict (*People* v. *Silva*, 143 Cal.App. 2d 162, 169 [300 P.2d 25]), after a *prima facie* proof of the *corpus delicti* (*People* v. *Davis*, 106 Cal.App. 179, 188 [289 P. 194]).

As to the claimed inconsistencies in the testimony of the victim that was a matter for the duly constituted arbiter of the facts, and if the jury, as manifestly they did, believed only that portion of the victim's testimony bearing upon the immediate circumstances of the robbery, and thus became satisfied beyond a reasonable doubt of appellant's guilt, it was, of course, within their province to plant their verdict upon that particular portion of the victim's testimony, al-

though they might have regarded the statements of the witness on other points as of doubtful verity.

The judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Fourt, J., and Lillie, J., concurred.