[Crim. No. 3646.   First Dist., Div. Two.   Nov. 17, 1959.]

THE PEOPLE, Respondent, v. LOUIS NORMAN, Appellant.

Dennis L. Woodman for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Assistant Attorney General, and Joseph I. Kelly, Deputy Attorney General, for Respondent.

KAUFMAN, P. J.—Appellant was charged by indictment with the murder of one Martin Avila. A jury found the appellant guilty of murder in the first degree, and fixed his penalty at life imprisonment, pursuant to sections 187 and 190.1 of the Penal Code. He appeals from the judgment of conviction and the order denying his motion for a new trial. His only contention on appeal is that on the basis of the evidence presented, there is an inherent impossibility that he fired the fatal shot.

A careful review of the testimony indicates that there is no merit in the appellant's argument. Several witnesses testified about the circumstances which preceded the shooting. On the evening of September 14, 1958, a Sunday, Martin Avila, the victim, and his common-law wife, Violet Bissonette, and his employer, Mr. Bertolucci, were drinking beer at the San Gregorio Inn, in the town of San Gregorio on the coast of San Mateo County. The appellant arrived at the bar about 5:30 or 6 p. m. He had had relations with Miss Bissonette late in June, after she had left Mr. Avila for two days as the result of an argument. The bartender, Mr. Lavin, asked the appellant, "Can I help you, sir?" The appellant replied, pointing to Miss Bissonette, "You can't help me but the girl can."

The appellant apologized to Mr. Lavin and then engaged the victim in a conversation. An argument began after the

appellant told Mr. Avila that he had a good looking wife. Mr. Avila hit the appellant, but the appellant did not fight back. The owner of the San Gregorio Inn asked the appellant to leave. The appellant left and came back in three-four minutes. The appellant then asked Mr. Avila if he would like to play dice for a drink. Mr. Avila first refused, but consented after the appellant asked him if he was afraid. The victim and Miss Bissonette left the San Gregorio Inn about 9 p. m. The appellant left at the same time and followed closely behind them. After they had begun to walk to the victim's home on the Bertolucci Ranch, just off the San Gregorio-La Honda Road, two witnesses saw the appellant sitting in his old car with the lights on and then take off toward La Honda on the San Gregorio-La Honda Road. They saw the appellant's car turn left into the Bertolucci Ranch road and then back up a few feet. They heard a shot and watched the appellant's car quickly drive off in the direction of the San Gregorio Inn. Other witnesses also heard the shot and a noisy car driving away.

Miss Bissonette testified that after leaving the San Gregorio Inn, she and the victim walked on the left side of the La Honda-San Gregorio Road. They had just reached the entrance of the ranch road, which runs off the highway. A car came up behind them and honked. They did not know who was in the car but thought it might be the victim's employer who often gave them a ride home. They walked a few feet further to the two posts which mark the gate of the Bertolucci Ranch, about 23 feet from the San Gregorio-La Honda Road, and then the car turned into the ranch road. Not recognizing the car, they turned around and walked toward it. As they started to walk toward the car, the car backed up until it was facing them and stopped about 3 feet away. Miss Bissonette stood with her left shoulder toward the highway with her arm around the victim. The victim was standing on her left side, at a right angle toward her. The victim, who was 5' 11" tall, was just starting to say something to whomever was in the car when a shot rang out. She saw a pin-point of light, like a lighted cigarette on the passenger side of the car. The car backed out to the highway and quickly took off in the direction of the San Gregorio Inn. The victim turned, fell backwards and dropped to the ground.

The body of the victim was found 900 yards east of San Gregorio on the La Honda-San Gregorio Road, at the entrance of the Bertolucci Ranch road. The cause of death was a single bullet through the heart. The victim was lying parallel to

the road, on his right-hand side, with his head and shoulders off the road. The bullet entered the body about the middle of the right side, then dropped down at a 30° angle, and exited in a straight line. There was no way of determining the type of weapon used or the size of bullet. The county pathologist could not tell whether the weapon had been fired at a close range.

The only people present at the scene of the shooting were the appellant, the victim and Miss Bissonette. The night was a clear one with good visibility. There was no moon. The only illumination at the scene of the shooting was provided by auto headlights.

The appellant stated that on the night in question, he followed the victim and Miss Bissonette because the victim had invited him over for a drink. This testimony was contradicted by Miss Bissonette who testified that they had no beer in the house that evening. The appellant stated that he drove up behind the victim and Miss Bissonette as they entered the gate to the ranch. He was alone in his car with the windows open. He missed the ranch road and so had to back up a few feet. He heard a shot and thinking it was meant for him, quickly drove off. He did not hear Miss Bissonette cry out because his car was noisy. He did not smoke. He did not go to his home in San Carlos but drove to Santa Cruz where he worked. He spent the night in his car on the beach, in order to sleep off his hangover. The next day, Monday, he did not go to work, but returned to his home. He was arrested about 5 p. m. on Monday.

The appellant would not reply when repeatedly asked whether he had shot Mr. Avila. He did state, however, that he had been using firearms since he was a child, had a better-than-average knowledge of rifles and was a very good shot. He also stated that he went hunting and frequently had a gun in his car, but did not have a gun in his car on September 14th. An unfired .22 cartridge was found in the glove compartment of the appellant's car and other ammunition at his home. There was no evidence that the appellant had had a gun with him on September 14th, but he had access to several weapons on that day. The appellant's roommate, Tom Corkery, testified that on the afternoon of the 14th, he had reminded the appellant that it was the last day of the deer season and suggested that the appellant take his (Corkery's) .22 rifle and get some meat.

Appellant argues that the evidence presented about the

position of the deceased at the time of the shooting negates any possibility that he fired the fatal shot. His argument is based on the testimony of the county pathologist that the bullet entered the body at a particular angle, and the testimony of Miss Bissonette on cross-examination that the victim was more or less facing one of the posts at the entrance of the Bertolucci Ranch. Appellant argues that if the victim was facing the post, and the car was in the position claimed by the complaining witness, it was inherently impossible for the fatal shot to have come from his car and enter the body at the 30° angle. Therefore, he argues this case is a proper one for the application of the rule, that where the evidence relied upon by the prosecution is so improbable as to be incredible, a question of law is presented, which authorizes an appellate court to set aside a conviction. (*People* v. *Dorland,* 2 Cal.2d 235 [40 P.2d 474] ; *People* v. *Niino,* 183 Cal. 126 [190 P. 626].) We cannot agree. ■ To be improbable on its face, the evidence must assert that something has occurred that it does not seem possible could have occurred under the circumstances disclosed, and the improbability must be apparent. (*People* v. *Braun,* 14 Cal.2d 1 [92 P.2d 402].) To come within the rule of inherent improbability, testimony must be such that it is physically impossible for it to be true, or its falsity must be apparent without resort to inference or deduction. (*People* v. *Mason,* 130 Cal.App.2d 533, 534 [279 P.2d 621].) ■ The rule is cogently set forth as follows in *People* v. *Collier,* 111 Cal.App. 215, 226 [295 P. 898] :

" . . . We understand that an appellate court can reject the positive testimony of a witness only when that testimony is 'inherently improbable.' It is not sufficient that the testimony may disclose circumstances which are unusual. Where the testimony is such that within the knowledge of reasonable men it cannot be true the appellate court might assume that knowledge and hold the testimony legally insufficient, but to do so the court must act on what is equivalent to judicial notice." (*People v. Wilder,* 151 Cal.App.2d 698 at 703 [312 P.2d 425].)

In the instant case, there is remarkably little conflicting evidence considering the nature of the case. At the most, there is a conflict in the testimony of the complaining witness, Miss Bissonette. At one point, she testified that the victim was not facing the post and that the car from which the shot came was about 12 feet away. There was also evidence that there was a difference of elevation between the highway and the point at which the shooting occurred.

█ Evidence which is unusual or inconsistent is not necessarily improbable. (*People* v. *Braun,* 14 Cal.2d 1 [92 P.2d 402].) █ It was the function of the trial court, not this court, to resolve the inconsistencies and contradictions, if any, in the testimony of the witnesses. █ The trier of fact may believe and accept a part of the testimony of a witness and disbelieve the remainder. (*People* v. *Bahara,* 159 Cal.App.2d 160 [323 P.2d 453].) █ On appeal that part which supports the judgment must be accepted, not that part which would defeat or tend to defeat the judgment. (*People* v. *Thomas,* 103 CalApp.2d 669 [229 P.2d 836].)

█ ". . .' [T]he rule is well settled that to warrant the rejection of the statements given by a witness who has been believed by a jury, or trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]), and it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends (*Hicks* v. *Ocean Shore Railroad, Inc.,* 18 Cal.2d 773, 781 [117 P.2d 850]).' (*People* v. *Simpson,* 43 Cal.2d 553, 562 [275 P.2d 31].) █ Even testimony which is subject to justifiable suspicion does not warrant the reversal of a judgment. (*People* v. *Cahan,* 141 Cal.App.2d 891, 897 [297 P.2d 715].) " (*People* v. *Bahara,* 159 Cal.App.2d 160 at p. 162 [323 P.2d 669].)

█ In keeping in mind the above stated rules, there is nothing in the testimony which would justify declaration by this court that the verdict of the jury is barren of a sufficient foundation to uphold it. Rather, there is an overwhelming amount of evidence against the appellant. The appellant admits being in the car from which the eyewitness observed the fatal shot being fired. After the fatal shot was fired the appellant fled the scene. █ Such flight may be considered by the jury as indicating the guilt of the accused. (*People* v. *Davis,* 48 Cal.2d 241, at 251 [309 P.2d 1].)

We conclude that the judgment finds support in the record before us and accordingly the judgment and order denying the motion for new trial are hereby affirmed.

Dooling, J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 13, 1960.