[Crim. No. 1282.    Fourth Dist.    Oct. 24, 1960.]

THE PEOPLE, Respondent, v. ALFRED LOUIS LOVE, Appellant.

Alfred Louis Love, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith, Deputy Attorney General, Kit Nelson, District Attorney, and Hayward LeCrone, Deputy District Attorney, for Respondent.

SHEPARD, J.—Defendant was charged by information with two counts of robbery. Count one related to the robbery of Jim Moeder, the operator of a Richfield Service Station located at 401 Union Avenue, Bakersfield, on the night of July 31, 1959. Count two related to the robbery of Edward Robinson, the operator of a Hudson Oil Company Service Station located at 241 Union Avenue, Bakersfield, on the night of August 5, 1959. After trial by jury, defendant was, on November 12, 1959, acquitted on count one, but found guilty as charged on count two. He requested immediate judgment, and was sentenced to state prison for the period prescribed by law. He was represented at the trial by counsel privately employed by him, but on appeal has chosen to represent himself in propria persona.

His notice of appeal from the judgment of conviction we will deem sufficient in order that the matter may be decided on its merits. His three separate requests for additional time to file an opening brief were granted by this court, so that his opening brief on appeal was not filed until August 19, 1960, and his time for filing his final brief has expired.

### SUFFICIENCY OF THE EVIDENCE

Appellant's first contention appears to be that the evidence was insufficient to support the verdict, and his primary argument in this regard appears to revolve around the weakness of his identification by the victim Robinson.

■ It is well settled by repeated decisions by the courts of this state that:

" '. . . Questions of the weight of the evidence and the credibility of the witnesses are for the trial court, and since the circumstances reasonably justify the finding of guilt, an opposing view that they also may be reconciled with innocence will not warrant interference with the judgment on appeal.' " (*People* v. *Lyons,* 50 Cal.2d 245, 259 [6] [324 P.2d 556].) See also *People* v. *Wein,* 50 Cal.2d 383, 398-399 [13, 14] [326 P.2d 457]; *People* v. *Love,* 53 Cal.2d 843, 850 [2] [3 Cal. Rptr. 665, 350 P.2d 705].

■ In general substance, the record before us shows that the victim Edward Robinson, a service station attendant, at approximately midnight of August 4 or the first moments of the morning of August 5, first observed defendant approach the service station on foot. The service station was fully lighted. Defendant pulled a gun that the victim believed to be a .32 caliber automatic pistol, motioned defendant back inside the service station room, grabbed him, told him to lie face down in the compressor room, searched the victim's pockets, took his money and keys, took the money out of the cash drawer, questioned the victim as to the safe combination, threatened him if he did not reveal it, and took him outside. Just then a car drove into the service station. The victim said to the car driver, "That guy just held me up." Defendant disappeared around the building and the victim called the police. Defendant was apparently in a lineup of several prisoners at the police station or jail the next afternoon, but the victim failed to identify defendant at that time. The victim also, at the trial, failed to accurately remember the occasion of that lineup. The victim explains these discrepancies by the fact that after coming off the night shift he drank a half dozen beers and went to sleep. He was awakened by an officer from this sleep and was taken to the lineup while still intoxicated and in a mentally confused state. This was on August 5. His intoxication was corroborated by the testimony of officer Lostaunau. At a later time in another lineup of prisoners on August 31, 1959, Robinson positively identified defendant, and also at the trial.

Other evidence showed that shortly after midnight, at about the time of the robbery, a Mary Dahlquist returned to her home nearby and saw an old, dark sedan parked in a vacant lot next door and near to where the robbery occurred. A few minutes later officer Bradford inquired of her, she told him

of seeing the sedan, and upon looking for it, they discovered it was gone. At about 1:50 a.m. defendant, while traveling with a companion in a 1937 model green, four-door Chevrolet sedan, was stopped by officer Cronkhite because of poor lights, questioned, and released but arrested later the same day. He told this and other officers three different conflicting stories as to where he had been, first stating he had been to Pumpkin Center, later saying he had been to Buttonwillow to see about a labor contract, about going to collect $5.00, and later, at the trial, about being hired for the sum of $7.00 by a third man whose name he did not know and whose description he could not give, to take such man to Buttonwillow to a place in Buttonwillow he did not know the address of and could not describe. Other officers found footprints leading from the service station to the place where the old dark sedan had been parked in the vacant lot. These footprints matched the shoes worn by defendant.

On the same day, August 5, the 1937 Chevrolet sedan in which defendant had been riding was traded in at a used car lot and on the following day, August 6, this car was sold to a person giving the name of H. F. Smith whose references were false, who could not thereafter be found, and the Chevrolet likewise could not be found, so that the tire could not be compared with the tire tracks of the car to which the tracks of defendant's shoes led in the vacant lot above referred to.

Substantial evidence connecting defendant with the robbery on July 31, of the Richfield Station was adduced. However, that robbery was committed at a time when the station had just closed, all lights except the night light were out, the victim attendant, Moeder, was just leaving, and Moeder, while stating that defendant's features and build were like those of the robber, still could not make a positive identification. Also, the tracks were more confused and the presence of the car on the vacant lot was not observed. In addition, there was lacking the conflicting stories told just after the robbery of the 5th. The jury returned a verdict of not guilty on that count.

Defendant and a companion testified to an alibi of going to Buttonwillow, defendant claiming he was paid $7.00 to take a man he did not know and could not describe to a place in Buttonwillow that he likewise could not describe nor relocate. Alibi witness Jones was likewise vague in his testimony. Their story lacked any real appearance of veracity, and the jury was not compelled to believe it. Defendant, in impeachment, admitted two prior felony convictions, one of

robbery and one of sale of narcotics. Jones, on impeachment, admitted prior conviction of conspiracy to furnish narcotics to a minor.

"It is, of course, fundamental that the credibility of a witness is for the determination of the trier of fact. ██ Hence conflicts and inconsistencies in the testimony of an individual witness are to be resolved by the fact finding authority." (*People* v. *Haywood*, 131 Cal.App.2d 259, 261 [2] [280 P.2d 180].) See also *Bitsekas* v. *Parechanian*, 67 Cal. App. 148, 153 [2, 3] [226 P. 974]; *People* v. *Treggs*, 171 Cal. App.2d 546, 550 [4] [341 P.2d 347]; *People* v. *Huston*, 21 Cal.2d 690, 693 [1, 2] [134 P.2d 758]; *People* v. *Norman*, 175 Cal.App.2d 348, 353 [3-10] [346 P.2d 221].

██ The sum total of the evidence adduced was ample to sustain the verdict of the jury and the judgment. We find no merit in defendant's contention.

### Misconduct of District Attorney and of Police

██ Defendant appears to contend that there was prejudicial misconduct on the part of the police in attempting to secure identification of defendant by the victim Moeder in the robbery charged in count one of the information. Defendant claims that Moeder's testimony is susceptible of the construction that the police urged Moeder to identify defendant as the robber, and quotes at some length Moeder's testimony. The testimony of Moeder, however, is also susceptible of the construction that the police felt sure they had the robber among those in the lineup and they wished Moeder would pick him out. Moeder's inability to positively identify was perfectly reasonable in view of the difference in the light situation. Defendant seems to believe that some such urging may have caused Robinson to give positive identification. There is nothing, however, in the record to support this. The jury was entitled to believe that if the police had been inclined to push an identification by Robinson, they would have planted the suggestion in his mind when he was intoxicated at the lineup on August 5, 1959, and the jury could have, further, believed that Robinson's failure in his intoxicated condition to make the identification then showed a complete lack of improper suggestion by the police. In any event, the first count was an acquittal, and no such evidence appears as to the second count.

Apparently defendant is contending that the district attorney was guilty of prejudicial misconduct in his opening state-

ment to the jury in which he referred to three armed robberies. The first of these robberies was the so-called Golden Eagle Station robbery which occurred at 1331 East Truxton, Bakersfield, on December 26, 1952. The fact of this robbery, to which defendant pleaded guilty February 6, 1953, was used by the prosecution both for impeachment and for proof of similarity of *modus operandi* between that and the crimes with which defendant was here charged. In that case, defendant poked some object wrapped in a handkerchief against the victim and, as in the cases here charged, compelled him to lie on his face, searched his pockets, took his money, inquired about more money, took the money from the cash drawer, and left. Certainly defendant wanted the victim to believe that at that time he held a gun, and the evidence could be so construed. Whether defendant actually held a gun or pleaded guilty to first or second degree robbery, it would seem the district attorney was speaking in good faith and had a foundation of evidence. This was also true of the two charges here tried. The inferences indulged by him were not unreasonable under the evidence.

As was said in *People* v. *Eggers,* 30 Cal.2d 676, 693 [27] [185 P.2d 1] :

"In the argument before the jury, any reasonable inference may be drawn from the evidence, and it is a matter within the discretion of the trial court to determine whether counsel stays within the permissible range of discussion." Also see *People* v. *Simpson,* 43 Cal.2d 553, 570 [275 P.2d 31] ; *People* v. *Hoyt,* 20 Cal.2d 306, 318 [11, 12] [125 P.2d 29].

The court has read the entire record, and it is apparent that defendant was afforded a fair trial. We find no prejudicial error.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.