19 Cal.Rptr. 82]

[Civ. No. 6666. Fourth Dist. Feb. 5, 1962.]

WILLIAM W. COTTLE, Plaintiff and Appellant, v. KATH-
ARINE C. GIBBON, Defendant and Respondent.

Best, Best & Krieger, Arthur L. Littleworth and Glen E. Stephens for Plaintiff and Appellant.

Thompson & Colegate and Don C. Brown for Defendant and Respondent.

COUGHLIN, J.—Basically, the issues on this appeal relate solely to the sufficiency of the evidence to sustain the findings of the trial court in favor of the defendant, the respondent herein. The plaintiff, who is the appellant herein, contends to the contrary, claiming that the judgment against him is the result of a misconception of the law, but this contention is without merit.

The plaintiff and defendant are brother and sister respectively; own adjoining ranches; and are litigating a boundary dispute arising out of such ownership. The properties in question, which are referred to as the "upper" ranch and the "lower" ranch, at one time were owned, respectively, by persons named Johannsen and Miller; later were acquired from them by the father and an aunt of the plaintiff and defendant; and subsequently were transferred by the father and the aunt to them. This transfer conformed to a partition agreement between the plaintiff and defendant, previously executed in contemplation thereof, which provided, in sub-

stance, that the plaintiff should acquire the property referred to as the "lower" or Miller ranch, and the defendant should acquire the property referred to as the "upper" or Johannsen ranch. The legal descriptions used in both the partition agreement and the deeds to plaintiff and defendant conformed to the legal descriptions used in the deeds by Miller and Johannsen to the father and aunt.

A controversy respecting the location of the boundary line between these ranches preceded the present action wherein the plaintiff, who claims that a fence dividing a part of the property marks the true boundary line, seeks reformation of the partition agreement; a judicial determination that the fence line constitutes an agreed boundary line; and also that he has obtained title to the disputed area under the doctrine of adverse possession. Judgment was rendered in favor of the defendant and the plaintiff appeals.

Preliminarily it is proper to refer to some fundamental and oft-repeated rules. ■■ In a case tried without a jury, the trial judge is the sole arbiter of all conflicts in the evidence, conflicting interpretations thereof, and conflicting inferences which reasonably may be drawn therefrom; is the sole judge of the credibility of the witnesses; may disbelieve them even though they are uncontradicted if there is any rational ground for doing so; and, in the exercise of a sound legal discretion, may draw or may refuse to draw inferences reasonably deducible from the evidence. (*Blank* v. *Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868] ; *Church of Merciful Saviour* v. *Volunteers of America,* 184 Cal.App.2d 851, 856-857 [8 Cal.Rptr. 48].) ■■ When the sufficiency of the evidence to sustain a finding of fact is contested on appeal, the issue thus presented is whether there is any substantial evidence, direct or indirect, contradicted or uncontradicted, which will support the finding (*Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231] ; *Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593]) ; it will be assumed that the trial judge resolved every factual conflict in favor of the prevailing party (*Thomas* v. *Hunt Mfg. Corp.,* 42 Cal.2d 734, 736 [269 P.2d 12] ; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689]) ; and every inference reasonably deducible from the evidence which will support the finding must be accepted whereas those which will support a contrary conclusion must be rejected. (*Hamilton* v. *Pacific Elec. Ry. Co.,* 12 Cal.2d 598, 602 [86 P.2d 829] ; *Wilbur* v. *Wilbur,* 197 Cal. 1, 7 [239 P. 332] ; *Garland* v. *Hirsh,* 74 Cal.App.2d 629, 636 [169 P.2d 405].)

The partition agreement in question was effected in November, 1941. At this time the two ranches, which had been purchased in 1936 from Johannsen and Miller, were owned by the plaintiff's and defendant's father and aunt. At the time of this purchase, a fence 1,000 feet in length, which had been erected many years before, extended southerly from the north line of the property along but actually east of the north-south boundary line between the two ranches. The overall length of this boundary line approximated 2,300 feet. According to undisputed evidence, the northerly part of this fence was 123.57 feet east of the true north-south boundary line, and an extension thereof to the southerly line of the property would have placed it 70.08 feet east of the true boundary at the latter point. After the ranches were purchased from Johannsen and Miller, the father operated them as a single unit, and during this time removed all but the northerly 300 feet of the fence in question. In 1941, prior to their execution of the partition agreement and in contemplation of the transfer of the property to them, the plaintiff and defendant entered upon extensive negotiations, involving discussions over a period of months, respecting a division of the property between them. At one point in these discussions both parties indicated their desire to have the "upper" ranch. Later, following concessions by the defendant which need not be related here, it was agreed that she should have the "upper" ranch and the plaintiff should receive the "lower" ranch. In the partition agreement eventually executed, the property to be transferred to the defendant was referred to as parcels 1 and 2, and was described in accord with the legal description used in the Johannsen deed, while the property to be transferred to the plaintiff was referred to as parcel 3, and was described in accord with the legal description used in the Miller deed. In the course of his testimony relating the discussions between the parties with respect to the two ranches, the plaintiff testified that the "upper" ranch referred to parcels 1 and 2 and the "lower" ranch referred to parcel 3. The defendant testified that in discussing a division of the property she, her brother, and her husband referred to it as the "upper" ranch and the "lower" ranch, and as parcels 1, 2 and 3 as used in the partition agreement; that parcels 1 and 2 were the "upper" ranch, and parcel 3 was the "lower" ranch; that the property was divided by legal descriptions; that "we didn't know where those descriptions went and neither did my father"; and that in referring to the "upper" ranch she

meant "Just the top of the hill where we used to take a walk, and there was some hay fields and then there were a whole lot of hills and nobody knew where the line went."

The plaintiff claims that he and his sister executed the partition agreement under the mistaken belief that the fence in question marked the common boundary which separated the "upper" and the "lower" ranches, which entitled him to reformation of the agreement accordingly; that, even though reformation is not in order the judgment should have been in his favor under the doctrine of agreed boundaries; because the evidence in the case required a finding that the location of the common boundary was uncertain and that he and his sister agreed that the fence line was the common boundary line; and that, in any event, he had acquired title to the disputed strip of property by adverse possession.

In substance, the trial court found that the parties did not execute the partition agreement under a mutual mistake of fact as to the location of the common boundary between the "upper" and the "lower" ranches; that they did not agree to the location of that boundary line; and that the plaintiff did not acquire the disputed strip by adverse possession.

The written findings of fact fully support the judgment in favor of the defendant and, in turn, under the rules heretofore related, are fully supported by substantial evidence. We state this conclusion after a review of the whole record and the parties' contentions with respect thereto, but without setting forth our analysis thereof, which is without the scope of our obligation in the premises. (*Fomco, Inc.* v. *Joe Maggio, Inc.*, 55 Cal.2d 162, 164 [10 Cal.Rptr. 462, 358 P.2d 918]; *Edwards* v. *Container Kraft Carton etc. Co.*, 161 Cal.App.2d 752, 756 [327 P.2d 622].) Nevertheless, it is proper to note that in his attack upon the sufficiency of the evidence, the plaintiff brushes aside testimony which he describes as "simply not credible" or "hardly credible." Decisions respecting the credibility of witnesses and the acceptance of or weight to be given their testimony, unless obviously false or inherently improbable, are not subject to review on appeal. (*Bennett* v. *Chandler*, 52 Cal.App.2d 255, 261 [126 P.2d 173].) The testimony referred to by the plaintiff is neither obviously false nor inherently improbable. In similar vein, the plaintiff claims that the testimony by the defendant which supports the findings should not be accepted because it is contradicted by other testimony given by her. If such be the fact, it was within the province of the trial judge to consider the contradiction in

such manner as he deemed proper; to reject the whole testimony as unworthy of belief or to accept that part thereof which he concluded represented the truth. (*People* v. *Davis*, 48 Cal.2d 241, 248 [309 P.2d 1].) Contradictions in the testimony of a witness do not require its total rejection. (*People* v. *Wade*, 53 Cal.2d 322, 329 [1 Cal.Rptr. 683, 348 P.2d 116]; *People* v. *Treggs*, 171 Cal.App.2d 546, 550 [341 P.2d 347].)

 In support of his position that the trial court did not correctly apply the law in the premises, the plaintiff refers to portions of a memorandum opinion filed by the trial judge. Such an opinion may be considered for the purpose of discovering the processes by which the trial judge arrived at his conclusion (*Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740, 750 [47 P.2d 273]; *Arvin-Kern Co.* v. *B. J. Service, Inc.*, 178 Cal.App.2d 783, 793 [3 Cal.Rptr. 238]), but may not be used to impeach, modify or add to that conclusion as stated in the written findings of fact signed by him. (*Strudthoff* v. *Yates*, 28 Cal.2d 602, 615 [170 P.2d 873]; *Perry* v. *Jacobsen*, 184 Cal.App.2d 43, 50 [7 Cal.Rptr. 177].) The portions of the opinion to which the plaintiff refers are taken out of context and do not truly reflect the determination of the court in the premises; do not impeach the findings of fact actually made; nor support the plaintiff's contention that the judge did not follow applicable principles of law. The whole record, including the evidence, the judge's memorandum opinion, and the findings, consistently support the conclusion that the trial judge believed that the plaintiff mistakenly thought that the fence was located upon the common boundary line, but that this mistake was not material to the partition agreement; that the parties to that agreement intended that their father and aunt should transfer the "upper" ranch and the "lower" ranch as described in the deeds from Johannsen and Miller respectively; that the initial and principal point of divergence between them concerned who should receive the "upper" ranch; that their disagreement with respect to this matter was settled by a compromise which had no reference to the common boundary between the two ranches; and that the location of that boundary did not influence the decision made. In short and in substance, the court determined that the parties would have executed the agreement in question whether the common boundary followed the fence line or was located as placed by the subsequent survey. This conclusion is in harmony with the testimony of the plaintiff that he mistakenly believed that

the fence was located on the common boundary line, and with the testimony of the defendant that the parties referred to the "upper" ranch and "lower" ranch and to parcels 1, 2 and 3 without regard to where the line actually was located.

A mistake of fact may be the basis for reformation of a written agreement only if the mistake is material to the agreement. (*M. F. Kemper Const. Co.* v. *City of Los Angeles,* 37 Cal.2d 696, 701 [235 P.2d 7]; *Auerbach* v. *Healy,* 174 Cal. 60 [161 P. 1157]; *Reid* v. *Landon,* 166 Cal.App.2d 476, 483 [333 P.2d 432].)

Furthermore, it should be noted that the findings referred only to the mistaken belief of the plaintiff that the fence line was the common boundary line, and not to a similar belief by the defendant. There is no finding of *mutual* mistake. The defendant's testimony adequately supports this conclusion. Consequently, reformation was not authorized.

"The purpose of reformation is to correct a written instrument in order to effectuate a common intention of both parties which was incorrectly reduced to writing." (*Lemoge Electric* v. *County of San Mateo,* 46 Cal.2d 659, 663 [297 P.2d 638]; *Bailard* v. *Marden,* 36 Cal.2d 703, 708 [227 P.2d 10]; *Paterson* v. *Board of Trustees,* 157 Cal.App.2d 811, 816 [321 P.2d 825].)

In the case at bar, the requisite common understanding as to the location of the disputed boundary line did not exist. The decisions in *Martinelli* v. *Gabriel,* 103 Cal. App.2d 818 [230 P.2d 444] and other cases cited by the plaintiff, wherein the trial court had found the existence of a mutual mistake and granted reformation, clearly are not applicable to the case at bar where the finding of mutual mistake was not made. The issue of a known or suspected unilateral mistake (Civ. Code, § 3399) is not presented by the pleadings nor supported by the evidence, consequently, the findings as made fully dispose of any claim to relief on the ground of mistake.

The plaintiff also contends that the court failed to apply the law which is a part of the doctrine of agreed boundaries. Although the court found that the location of the common boundary line was uncertain, it also found that the parties did not agree upon the location of the fence line as the location of the common boundary line. There was evidence that the plaintiff had used the property up to the fence line ever since he acquired it in 1941. Relying on such evidence, he claims that the court should have implied an agree-

ment between him and his sister that the fence line was the boundary line. This contention is based on such cases as *Ernie* v. *Trinity Lutheran Church,* 51 Cal.2d 702 [336 P.2d 525] ; *Mello* v. *Weaver,* 36 Cal.2d 456 [224 P.2d 691] and *Hannah* v. *Pogue,* 23 Cal.2d 849 [147 P.2d 572], which sustained trial court findings that parties to a boundary dispute had agreed to its location, where the only evidence in support of such agreement was an inference based on acquiescence and occupancy over a long period of time. In the instant case, even though it be assumed that the evidence warranted such an inference, the trial court did not draw the same and, under the rules heretofore related, was not required to do so. The evidence of occupancy and acquiescence in this case supports conflicting inferences. The defendant testified that the use of the property by the plaintiff up to the fence was permitted under the premise that neither of them knew where the true boundary line was located; that they did not want to undertake the expense of changing all the fences, so they let things "set"; that they did not know "where to change them" as they did not know where the line was; that they did not want to "get into a survey expense"; and that she used some of her brother's land and in return he used property that was "down in the creek," but after the survey they did not do so. She also testified, in effect, that she and her brother agreed to use the property on their respective sides of the fence, with some variations, until they had a survey made. In addition, the defendant testified directly that she did not agree to use the fence line as the true boundary line. Obviously, the court was not required to accept the inference relied upon by the plaintiff which was basic to the decisions he cites.

The foregoing testimony also disposes of the plaintiff's contention that the court erred in finding against his claim of adverse possession. If the parties used the property in question pursuant to an agreement, and pending a survey, the possession was not adverse.

Furthermore, it is admitted that the plaintiff did not pay any of the taxes levied against the disputed strip. Payment of such taxes for the statutory period was essential to acquisition of title by adverse possession. (Code Civ. Proc., § 325; *Ernie* v. *Trinity Lutheran Church, supra,* 51 Cal.2d 702, 707; *Laubisch* v. *Roberdo,* 43 Cal.2d 702, 706 [277 P.2d 9].) The plaintiff's contention that he was not required to make such payment is without merit. The case which he cites in support of his position, i.e., *Ernie* v. *Trinity Lutheran*

*Church, supra,* 51 Cal.2d 702, contains a positive and direct *holding* to the contrary.

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.