[Crim. No. 2045. Fourth Dist. Dec. 17, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. BETTY JEAN GILBERT, Defendant and Appellant.

W. Craig Biddle, Public Defender, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant-appellant Betty Jean Gilbert was charged with the crime of robbery, in violation of Penal Code, section 211. She pleaded not guilty, waived a jury, and was tried and found guilty by the court of second degree robbery. Further proceedings were suspended and probation was granted for one year subject to certain terms and conditions.

Frank Eagler was similarly charged with said robbery. He entered a plea of guilty and testified against defendant, indicating that she had helped him plan the robbery and that she received part of the proceeds.

The only question raised on this appeal is whether defendant was convicted on the uncorroborated testimony of an accomplice.

The testimony of Shuford M. Jones, the victim, shows that on April 30, 1963, at about 10 a.m., the defendant, her husband, Frank Eagler, who drove, and Jones were driving to Riverside to see an attorney about representing Jones in some legal action; that the defendant was present with Jones during the conversation with his attorney; that Jones arranged to bring a fee to the attorney; that it was agreed that he and defendant would come back to Riverside at 3 p.m. and pay the attorney; that Eagler remained in the reception room and later took Jones and defendant with him in Eagler's car back to San Bernardino to obtain the money; that defendant's husband was not with them; that they let Jones out at the post office to arrange for the money and Eagler and defendant were to meet him later, about 2:30 p.m.; that Jones did not see defendant again that day but Eagler came back and picked him up; that Jones inquired as to defendant's whereabouts and Eagler told him she was "over at Jack's Bar" and said she was "trying to get up some money"; that they drove to Jack's Bar and Eagler went in and later came

out and said defendant would not be with them because she was trying to get some money for the attorney's fee; that Jones and Eagler left for Riverside; that Jones had the money for the attorney's fee in a bag in his coat pocket (twenty $100 bills and sixteen $50 bills); that Eagler stated he wanted to go to a bar in Bloomington first and gave Jones 25 cents to telephone the attorney in Riverside that he would be a little late; that he asked Eagler why he was going via Rialto and Eagler said it was a short way to Riverside; that Eagler stopped alongside the road and hit him across the head and blood poured out of the gash; that Eagler took the bag with the cash in it, pushed Jones out of the car and drove off, leaving Jones on the highway bleeding; and that a car came along and took Jones to the police station where he reported the robbery.

A bartender in Bloomington testified that he saw defendant in his bar with a man between 12 noon and 6 p.m. on the day of the robbery; that each ordered a highball and the drinks were paid for with a $50 bill. He said he could not remember who gave him the bill.

Eagler testified that he knew Jones; that he saw him on April 30, 1963, and picked him up with defendant Betty Jean Gilbert and another person and brought them to Riverside; that they saw an attorney and he (Eagler) then returned them to San Bernardino; that he let Jones off at the post office, went to Jack's Bar with defendant and later met Jones and returned to the bar and talked with defendant about going back to Riverside with them; that she declared the man (Jones) would become suspicious if she went along; that he proceeded with Jones via Bloomington, made a telephone call and stopped near a cement plant; that "We had discussed it at Jack's, and I had previously arranged with Betty and I was given the knowledge that he had gotten some large amount of money, but I had given no thought to the outcome"; that Jones started an act of perversion on him and he hit him over the head; that he saw an envelope in the car with money in it and he left; that later he joined Betty at Jack's Bar and she asked him if he had gotten the money and he said "Yes"; that they had several drinks and left to go to her mother's home; that en route Betty counted the money; and that on arriving at Betty's mother's home, she gave him $1,350 in $100 and $50 bills and gave her mother $50. He then testified that he first got the idea of robbing Jones about 2 p.m. on April 30 at Jack's Bar; that Betty said she knew Jones had withdrawn

$4,000 from the bank on Monday and she "wouldn't be ashamed if we were to rob him, and it would really be easy"; that Betty said she knew the man who could do it, namely, her father; that when they talked to her father about it he said if they couldn't get anybody else he would; that Eagler dropped her off again at Jack's Bar with the understanding "I was to come back"; that he got the money from Jones and returned to Jack's Bar; that after counting the money he wanted his part and they finally agreed to leave it at her mother's home; that later Betty "bawled him out" and then gave him $1,350; that Betty cashed a $50 bill at Jack's Bar and paid for their drinks; that he went to Los Angeles and left $1,250 with his sister; that later, when apprehended, he told the sheriff about the money and gave him a note to his sister enabling him to pick up the money from his sister.

A deputy sheriff testified that he had a conversation with Eagler and, after receiving the note, he obtained $1,250 (in $100 bills and one $50 bill) ; that he had a conversation with defendant that evening about 6:30; that she said she knew Eagler and related their actions that day in connection with going to the attorney's office in Riverside, dropping Jones off at the post office and going to Jack's Bar with Eagler; that defendant was asked as to her knowledge or participation in the robbery and she stated that she had nothing to do with it, that she received no money; and that as a result of a search of her purse, less than $5.00 was found.

Upon this evidence the court found the defendant guilty. A close question is here presented as to whether there was sufficient corroboration of the accomplice's testimony as to her knowledge and participation in the robbery and accepting some of the proceeds of that robbery.

■ The primary rule, as stated in *People* v. *MacEwing,* 45 Cal.2d 218 [288 P.2d 257], is that the corroborative evidence required by Penal Code, section 1111, relating to accomplices, must be considered without the aid of the testimony which is to be corroborated, and it is not sufficient if it requires the interpretation and direction of such testimony in order to give it value. ■ Corroborative evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth.

■ It is unnecessary that the accomplice be corroborated as to every fact to which he testifies, since if his testimony

could be completely proven by other evidence there would be no occasion to offer him as a witness. For the same reason, it is unnecessary for the independent evidence to establish guilt. (*People* v. *Reed,* 188 Cal.App.2d 395, 409 [10 Cal.Rptr. 536].) See also *People* v. *Davis,* 210 Cal.App.2d 721 [26 Cal.Rptr. 903]. *People* v. *Lyons,* 50 Cal.2d 245, 257 [324 P.2d 556], recites the rule as follows:

"The evidence need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth; it must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged."

 The perpetrator's testimony in the instant case was to the effect that he committed the robbery and that defendant instigated it and shared in the proceeds. The evidence corroborating the accomplice's story to this effect is circumstantial and involves inferences deducible therefrom.

Jones, the victim, and defendant apparently had known each other for some time. Both were seeking the services of an attorney. They visited the attorney together. It might well be inferred that each knew the amount of money the attorney required to be raised for his fee. They left with Eagler, who did not hear the conversation. It might well be believed that defendant told Eagler that Jones would obtain the money and that all of them would return at 3 p.m. that day with the money to the attorney's office. They let Jones out at the post office and it might be assumed that defendant went to Jack's Bar because that is where Eagler claims he next saw her when he went into the bar. Defendant told the officers that she was at the bar that afternoon with Eagler and that they were to pick up Jones after 2 p.m. and return with him to the attorney's office. The meeting with the accomplice shortly before the commission of the offense is some corroborative evidence. (*People* v. *Davis, supra,* 210 Cal.App.2d 721; *People* v. *Ward,* 40 Cal.App.2d 143 [104 P.2d 537].)

Jones corroborated Eagler's testimony in reference to the trip to the bar, and he related what Eagler had told him about defendant's being in the bar and that she said she would not accompany them to Riverside even though she had agreed to

do so. The fact that defendant refused to return with them to the attorney's office may have been because, as Eagler testified, "Jones would become suspicious" if she did and if the robbery occurred while she was with them. No other excuse for not going with them to the attorney's office that afternoon was offered by her at the trial. She failed to testify. Although previously friendly with Jones, she never saw him again from April 30, 1963, until October 2, 1963, the date of the trial.

After the robbery, the bartender identified her as being a patron in Jack's Bar together with a man unknown to the bartender. This corroborates to some extent the testimony of Eagler that they went to the bar before and after the robbery and there discussed the question of money division, drank some drinks and that one of them paid him with a $50 bill. Eagler said that defendant cashed a $50 bill at the bar. From these facts, the trial court could conclude that defendant had received part of the stolen money. A $50 bill is a fairly unusual denomination of currency. Defendant's relationship to the victim and the accomplice, and the cashing of the $50 bill on the very same day that the robbery was committed, would supply such circumstances as would make the inference a reasonable one. (*People* v. *Morris,* 110 Cal.App.2d 469 [243 P.2d 66].) █ It is settled law that the possession of stolen goods alone, shortly after the commission of a crime, is sufficient corroboration of an accomplice's testimony. (*People* v. *Miller,* 54 Cal.App.2d 384 [128 P.2d 785]; *People* v. *Robinson,* 184 Cal.App.2d 69, 77 [7 Cal.Rptr. 202].)

█ According to Eagler, the division of the money was discussed with defendant and he took about half of the money and the other half was left at defendant's mother's home. About one-half of the money was found at Eagler's home, which might well bear on the fact that defendant kept the other half. This corroborates, to some degree, Eagler's testimony that defendant told him she knew Jones had withdrawn $4,000 from the bank and she wanted Eagler to rob Jones because it "would really be easy"; that after the robbery Eagler was to return to San Bernardino, pick up defendant, and then take the money to the house of defendant's mother.

It appears to us that there was sufficient corroborative evidence and circumstances which satisfied the trier of fact that the accomplice was telling the truth.

Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.