[Crim. No. 27561. Second Dist., Div. One. Jan. 29, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ROBERT RUSCOE, Defendant and Appellant.

1006

## COUNSEL

Joseph E. 'Gerbac, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Kent L. Richland and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HANSON, J.—

### THE CASE

By information, defendant James Robert Ruscoe (hereinafter defendant or Ruscoe) was charged with extortion in violation of Penal Code section 518 (count I) and with grand theft in violation of Penal Code section 487, subdivision 1 (count II). An amendment to the information

alleged three prior felony convictions (grand theft—July 1965; grand theft—Dec. 1965; and interstate transportation of forged securities—Dec. 1972).

Defendant pleaded not guilty to both counts but admitted the prior felony convictions. Jury trial resulted in a not guilty verdict upon count I (extortion) and a guilty verdict upon count II (grand theft). Defendant's motion for a new trial was denied and he was sentenced to state prison for the term prescribed by law.

Defendant appeals from the judgment of conviction.

## BACKGROUND

In the spring of 1974, KHJ radio station conducted the "Cash Call Contest" which gave rise to the criminal charges. Basically, the "contest" operated as follows: a person's name and telephone number were put on a card. Several cards were placed in the box of the disc jockey on duty. About once an hour, the disc jockey would announce the exact amount of the jackpot of the "contest" and about 15-20 minutes later would take one of the cards and call the telephone number. If the answering person stated the correct amount of the jackpot on being asked, that person would win the money. If the person stated an incorrect amount, the next time the amount in the jackpot was announced the sum would be different.

## THE FACTS

In March or April of 1974, prosecution witness Ronald Manno, also known as Tony Mann (hereinafter Mann), a disc jockey for KHJ, accompanied a friend to a party at defendant Ruscoe's house where defendant was introduced to him as Jim Sinatra, a name which defendant testified he used. After their first meeting, Mann visited Ruscoe socially some 12-15 or more times.

In May of 1974, Mann took a week's vacation and left his car with defendant Ruscoe who met Mann at the airport upon Mann's return. Mann testified that shortly thereafter and about May 25, Ruscoe telephoned him at his house and told him he wanted and needed the $9,000 from the jackpot contest and that Mann was to help him get it; that Mann replied he did not want to get involved in anything like that and refused; that Ruscoe called Mann names and threatened him with

bodily injury or death, stating that he (Ruscoe) knew people affiliated with "The Family" which Mann assumed meant the Mafia; and that defendant told Mann that he would be at his house in 20 minutes to show he meant business.

Mann testified he went to the Beverly Hills police station where, on stating his life had been threatened by a caller from Los Angeles, he was told to go to the Los Angeles police, which he did, but that the Los Angeles (Hollywood) policeman on duty appeared disinterested in the early morning hour. Too frightened to go home, he (Mann) slept at the KHJ radio station.

Mann testified he received additional calls from defendant and a final one on May 31, 1974, at the radio station. During this last call on May 31, 1974, defendant Ruscoe said: "Okay. This is the way it's going to be. . . . You'll call this telephone number and just play the contest like you normally do." Mann wrote down the number and defendant said: "You'd better do it or else you're a dead man. And you won't know when or how. It could be by the breadman, the milkman, the gas station attendant."

On the same day (May 31, 1974) during the "Cash Call Contest" Mann called the telephone number given him by Ruscoe. The person answering identified herself as Lillian Tanner and gave the correct amount ($9,186) in the jackpot. Mann testified that he had never met Lillian Tanner until some days later when she appeared at the radio station and was given a check, dated June 11, 1974, for the $9,186, with station publicity pictures being taken of him handing her the check.[1]

Mr. Steinle (disc jockey), also known as Van Dyke, and Mr. Cagle (program director), also known as Peterson, employed by the radio station, testified that prior to May 31st Mann looked tired and nervous and that Mann told them he had not gone home, had spent part of the night at the station and was frightened because someone had threatened his life, but did not go into further details. Mr. Cagle told Mann before he went on his vacation that Mann's employment by KHJ was going to be terminated sometime after he returned from his vacation.

---

[1] According to defendant and at least two defense witnesses. Mann met Lillian Tanner the first day Mann was at defendant's house and had seen her on many of the occasions when Mann visited at defendant's house.

Defendant Ruscoe testified in his behalf that at the first meeting with Mann someone mentioned that Mann was in charge of the $9,000 jackpot contest; that he (defendant) suggested they "do it" and "split the money" but that Mann said, "I'm not that crazy,"; that Ruscoe said this as a joke; that he made the threatening telephone call to Mann and drove to Mann's house which he found dark but the reason was that he was furious with Mann because Mann wanted to involve his girl friend, Lillian Tanner, in a plan to obtain the contest jackpot and he made the threats to stop the plan because he disapproved of it.

Defendant Ruscoe further testified that Lillian Tanner was his girl friend and that she had moved into his house the first part of February of 1974 where she stayed except for the few occasions when she was at her mother's place; that on May 31, 1974, she was not at his house but he was there with some friends (none being called at trial) who had the radio on KHJ; that he heard Lillian Tanner win the contest; that the telephone call made to Lillian Tanner was not to his house but was to her mother's house; that he was very angry because Lillian Tanner had gone ahead with Mann after he (Ruscoe) had believed she would not do so as they had argued about it; that he never informed KHJ or the authorities at any time that the "Cash Call Contest" had been rigged.

Defendant Ruscoe testified that on Friday evening, June 14, 1974, Lillian Tanner came to his house with the $9,186 in cash since she did not have a chance to deposit the money in a bank. They were going to Malibu for the weekend so he (Ruscoe) distributed the money through-out the house in hiding places. They returned home on Monday, June 17, 1974, and on Tuesday, June 18, 1974, his home was burglarized. He reported the burglary to the police and stated to them that $2,100 was taken from his pants pocket. After the police left, he looked at the places where he hid the money Lillian Tanner had brought and found that about $4,000 had been taken in the burglary. He did not report the missing money but had $5,250 in his shirt pocket when arrested on Friday, June 21, 1974. He said he was waiting for Lillian Tanner to come to take her to the bank to deposit the money.

Defendant's monthly rental for the house he lived in during the period was $1,000; his income "came from restoring and refinishing the interiors, engines, and exteriors of classic automobiles, Rolls Royces, Bentleys, and occasionally Mercedes" and from "art work" and playing "professional billiards."

Lillian Tanner came in with another person when defendant was being arrested at his home on June 21, 1974, and told Officer Adams that the money removed from defendant's shirt had been a gift to her from her father. However, on June 25, she called Officer Adams and told him that the money had been won by her on a KHJ contest and requested that it be returned to her. On June 28, while in jail, defendant authorized release of the $5,250 to Lillian Tanner. On the same date, June 28, Lillian Tanner wrote a receipt for the money in the presence of Officer Adams who gave her the money. She was called as a witness by the prosecution but refused to testify on the ground that anything she might say might incriminate her.

On the evening of Friday, June 21, 1974, when defendant was arrested, he was given his *Miranda* rights and waived them. Police Officer Briggs found $5,250 cash on defendant in his shirt pocket and defendant "indicated that he had gotten it from his girlfriend, who had received an inheritance." When the arresting officer Adams had the $5,250 in his hands, he asked defendant about it and testified defendant told him that "he obtained the money from his girlfriend, Lillian Tanner, who had won $9,186 on a KHJ Radio Station quiz program."

ISSUE

Defendant's sole contention on appeal is there is insufficient corroborative evidence of the testimony of prosecution witness Mann as required by Penal Code section 1111.

DISCUSSION

Penal Code section 1111 provides: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall *tend* to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

"An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (Italics added.)

On appeal the record and all inferences must be viewed most favorably to the verdict and judgment in resolving this contention (*People* v. *Perry*, 7 Cal.3d 756, 774 [103 Cal.Rptr. 161, 499 P.2d 129]), and

those portions of defendant's testimony which support the verdict must be accepted, not those portions which defeat it. (*People* v. *Crooker,* 47 Cal.2d 348, 356 [303 P.2d 753]; *People* v. *Zurica,* 225 Cal.App.2d 25, 31 [37 Cal.Rptr. 118]; *People* v. *Causey,* 220 Cal.App.2d 641, 654 [34 Cal.Rptr. 43]; *People* v. *Norman,* 175 Cal.App.2d 348, 353 [346 P.2d 221].)

 Corroborative evidence, direct or circumstantial, is sufficient if it tends to connect defendant with the crime even though it is slight and entitled, when standing by itself, to but little consideration (*People* v. *McLean,* 84 Cal. 480, 482 [24 P. 32]; *People* v. *Hathcock,* 8 Cal.3d 599, 617 [105 Cal.Rptr. 540, 504 P.2d 476]; *People* v. *Negra,* 208 Cal. 64, 69-70 [280 P. 354]), nor does it need to establish the precise facts testified to by the accomplice. It is sufficient if it tends to connect the accused with the commission of the offense, and defendant's own statements and admissions, made in connection with other testimony, may afford corroboratory proof sufficient to sustain a verdict. It is not necessary that the corroborating evidence should go so far as to establish by itself, and without the aid of the testimony of an accomplice, that the defendant committed the offense charged. (See *People* v. *Negra, supra,* 208 Cal. at pp. 69-70; *People* v. *Wade,* 53 Cal.2d 322, 329 [1 Cal.Rptr. 683, 348 P.2d 116].)

 Moreover, defendant's own testimony and inferences therefrom, as well as the inferences from the circumstances surrounding the entire transaction, may be sufficient corroborative testimony. (*People* v. *Wade, supra,* 53 Cal.2d at p. 329; *People* v. *Hurd,* 5 Cal.App.3d 865, 875-876 [85 Cal.Rptr. 718]; *People* v. *Kramer,* 259 Cal.App.2d 452, 462 [66 Cal.Rptr. 638].) False or misleading statements to ·authorities may constitute corroborating evidence or as part of circumstances supportive of corroboration (*People* v. *Santo,* 43 Cal.2d 319, 327 [273 P.2d 249]), and "[a]lthough it has been said that corroboration is not sufficient where the circumstances are consistent with the innocence of the accused [citations], the more recent decisions have held that whether the corroborating evidence is as compatible with innocence as it is with guilt is a question of weight for the trier of fact [citations]." (*People* v. *Gallardo,* 41 Cal.2d 57, 63, fn. [257 P.2d 29].)

In the case at bench defendant Ruscoe was a witness on his own behalf. We hold that portions of his testimony amply corroborated the testimony of Mann and meet the requirements of section 1111 of the Penal Code. His (Ruscoe's) testimony that his first meeting with

Mann included a statement by him that they "do it" and "split the money" of the contest jackpot, even if said in a joking manner, implies that he knew of the contest and inferentially the possibility of its being rigged in some manner. He testified that after Mann returned from the vacation he threatened Mann with bodily injury and even went to Mann's house that very night as he had threatened to do. The jury was not required to give credence to his explanation.

Defendant's initial false or misleading statement to Officer Briggs that defendant's girl friend had received the $5,250 in an inheritance is part of the circumstantial evidence supportive of corroboration. (See, e.g. *People* v. *Santo, supra,* 43 Cal.2d at p. 327.) In addition, knowing that the $5,250 which he had on his person when arrested had been secured from the rigged contest and was illegally obtained, he signed authorization for its release to Lillian Tanner. Furthermore, he testified that he seldom listened to the KHJ radio station and that it happened to be turned to that station at the very time Mann called Lillian Tanner at her mother's house when she won the jackpot. The jury was not required to believe this was by mere happenstance. While each of these various items above may not suffice in itself to constitute corroboration, in their totality they do constitute corroboration which tends to connect defendant with the commission of the offense.

Furthermore, after Lillian Tanner received and cashed the $9,186 check, she turned the money over to defendant Ruscoe. He hid the money in various areas in his rented house and had $5,250 of the money in his shirt pocket when he was arrested and knew it came from the events surrounding the rigged jackpot contest.

We hold defendant Ruscoe's possession of the money obtained in commission of the crime, under the circumstances of the instant case, alone is sufficient corroboration to satisfy section 1111 of the Penal Code. (*People* v. *Gilbert,* 231 Cal.App.2d 364, 369 [41 Cal.Rptr. 679]; *People* v. *Jenkins,* 34 Cal.App.3d 893, 899-900 [110 Cal.Rptr. 465]; *People* v. *Robinson,* 184 Cal.App.2d 69, 77 [7 Cal.Rptr. 202].)

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 24, 1976.